# MELKONYAN *v.* SULLIVAN, SECRETARY OF HEALTH AND HUMAN SERVICES

No. 90–5538.   Argued April 15, 1991—Decided June 10, 1991

*Brian Wolfman* argued the cause for petitioner. With him on the briefs were *Alan B. Morrison, Patti A. Goldman,* and *John Ohanian.*

*Clifford M. Sloan* argued the cause for respondent. On the brief were *Solicitor General Starr, Assistant Attorney General Gerson, Deputy Solicitor General Shapiro, Edwin S. Kneedler,* and *William Kanter.*

JUSTICE O'CONNOR delivered the opinion of the Court.

A party that prevails against the United States in a civil action is entitled, in certain circumstances, to an award of attorney's fees, court costs, and other expenses. Equal Access to Justice Act (EAJA), 28 U. S. C. § 2412. Among other requirements, the prevailing party must submit to the court an application for fees and expenses "within thirty days of final judgment in the action." § 2412(d)(1)(B). This case requires us to decide whether an administrative decision rendered following a remand from the District Court is a "final judgment" within the meaning of EAJA.

I

In May 1982, petitioner Zakhar Melkonyan filed an application for disability benefits under the Supplemental Security Income (SSI) program established by Title XVI of the Social Security Act, 86 Stat. 1465, as amended, 42 U. S. C. § 1381 *et seq.* Following a hearing, an Administrative Law Judge (ALJ) concluded that petitioner was not disabled within the

meaning of the Act. The Appeals Council denied review of the ALJ's decision. In June 1984, petitioner timely filed a complaint in the United States District Court for the Central District of California, seeking judicial review pursuant to 42 U. S. C. § 1383(c)(3), which incorporates the review provisions of 42 U. S. C. § 405(g).

On May 30, 1984, shortly before filing the complaint, petitioner filed a second application for SSI disability benefits accompanied by new evidence of disability. In August 1984, petitioner's *second* application was approved as of the date it was filed. He then sought summary judgment in his action to review the administrative decision denying his *first* application for benefits. The Secretary cross-filed for summary judgment.

While the summary judgment motions were pending, the Secretary requested that the case be remanded to the Appeals Council so the first application could be reconsidered in light of the new evidence. Petitioner initially opposed the Secretary's remand request, arguing that evidence already in the record amply established his disability. Three months later, however, citing failing health and the prospect of increased medical expenses, petitioner moved the court to "either issue [the decision] or remand the cause to the Secretary." App. 9–10. In response, on April 3, 1985, the District Court entered a "judgment" which read in its entirety:

> "Defendant's motion to remand, concurred in by plaintiff, is granted. The matter is remanded to the Secretary for all further proceedings." App. 11.

One month after the remand, the Appeals Council vacated the ALJ's prior decision and found petitioner disabled as of the date of his original SSI application. That decision granted petitioner all the relief he had initially requested.

More than a year later, petitioner applied to the District Court for attorney's fees under EAJA. The Magistrate recommended that the fee application be denied, concluding that

the Secretary's decision to deny the first application was "substantially justified" at the time because the original record did not establish that petitioner was disabled. App. 20–21. The District Court agreed and denied the fee request.

The Court of Appeals for the Ninth Circuit vacated the District Court's judgment. It agreed that petitioner was not eligible for attorney's fees under EAJA, but for a different reason. *Melkonyan* v. *Heckler*, 895 F. 2d 556 (1990). The Court of Appeals noted that EAJA requires an application for fees to be filed within 30 days of the "'final judgment in the action,'" a term defined in the statute as a "'judgment that is final and not appealable.'" *Id.*, at 557 (quoting 28 U. S. C. § 2412(d)(2)(G)). In the court's view, its task was to determine when that "final and not appealable" judgment was rendered. 895 F. 2d, at 557.

The Court of Appeals recognized that the District Court's order remanding the case to the Secretary was not a "final judgment" because both parties anticipated further administrative proceedings. *Id.*, at 557–558. On remand, the Appeals Council reversed itself and held for petitioner; having won all he had asked for, there was no reason to return to the District Court. Under those circumstances, the Court of Appeals concluded that the Appeals Council's decision to award benefits was, in effect, a "final judgment" under EAJA, thereby commencing the 30-day period for filing the fee application. *Id.*, at 558–559. Because petitioner waited more than a year after the Appeals Council's decision, his application was untimely. *Id.*, at 559. We granted certiorari, 498 U. S. 1023 (1991), and now vacate the judgment of the Court of Appeals.

## II

As relevant to this case, EAJA provides:

"(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, . . . incurred by that party *in any civil action* (other than cases

sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States *in any court* having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

"(B) A party seeking an award of fees and other expenses shall, within thirty days of *final judgment in the action*, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection . . . ." 28 U. S. C. §§ 2412(d)(1)(A), (B) (emphasis added).

Petitioner argues that this provision is most naturally read to mean that it is *the court before which the civil action is pending* that must render the "final judgment" that starts the running of the 30-day EAJA filing period. Brief for Petitioner 13. We agree. As the highlighted language indicates, subsections (d)(1)(A) and (d)(1)(B) work in tandem. Subsection (d)(1)(A) authorizes the awarding of fees to parties that prevail against the United States in nontort civil actions, subject to qualifications not pertinent here. Subsection (d)(1)(B) explains what the prevailing party must do to secure the fee award. The requirement that the fee application be filed within 30 days of "final judgment *in the action*" plainly refers back to the "civil action . . . in any court" in (d)(1)(A). The plain language makes clear that a "final judgment" under § 2412 can only be the judgment of a court of law. This reading is reinforced by the contrast between § 2412 and 5 U. S. C. § 504(a). Section 504 was enacted at the same time as § 2412, and is the only part of the EAJA that allows fees and expenses for administrative proceedings conducted prior to the filing of a civil action. The pertinent language of § 504(a)(2) largely mirrors that of § 2412(d)(1)(B), with one notable exception: It states that a "party seeking an award of fees and other expenses shall, within thirty days of

a *final disposition in the adversary adjudication,*" file an application for fees. 5 U. S. C. § 504(a)(2) (emphasis added). Clearly Congress knew how to distinguish between a "final judgment in [an] action" and a "final disposition in [an] adversary adjudication." One is rendered by a court; the other includes adjudication by an administrative agency.

The Secretary's sole argument to the contrary rests on the 1985 amendments to EAJA, which added a definition of "final judgment" to § 2412. Traditionally, a "final judgment" is one that is final and appealable. See Fed. Rule Civ. Proc. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies"); *Sullivan* v. *Finkelstein,* 496 U. S. 617, 628 (1990) ("'[F]inal judgments' are at the core of matters appealable under § 1291"). Under § 2412, as amended, however, a "final judgment" is one that is "final and *not* appealable." 28 U. S. C. § 2412(d)(2)(G) (emphasis added). In the Secretary's view, "[t]his significant departure from the usual characteristi[c] of a 'judgment' entered by a court" dictates a different understanding of how the phrase "final judgment" is used in § 2412(d)(1)(B). Brief for Respondent 20. The Secretary argues that under the revised statute, a "final judgment" includes not only judgments rendered by a court, but also decisions made by administrative agencies. *Ibid.*

We reject this argument. Section 2412(d)(1)(B) does not speak merely of a "judgment"; it speaks of a "final judgment *in the action.*" As we have explained, the "action" referred to in subsection (d)(1)(B) is a "civil action . . . in any court" under subsection (d)(1)(A). The Secretary's suggested interpretation of "final judgment" does not alter this unambiguous requirement of judgment by a *court.*

As for why Congress added the unusual definition of "final judgment," the answer is clear. "The definition . . . was added in 1985 to resolve a conflict in the lower courts on the question whether a 'judgment' was to be regarded as 'final' for EAJA purposes when it was entered, or only when the

period for taking an appeal had lapsed." Brief for Respondent 20 (footnote omitted). The Ninth Circuit had held that the 30-day EAJA filing period began to run when the district court entered judgment. *McQuiston* v. *Marsh*, 707 F. 2d 1082, 1085 (1983). The Seventh Circuit rejected this view, holding that the EAJA filing period should be deemed to begin only after the time for taking an appeal from the district court judgment had expired. *McDonald* v. *Schweiker*, 726 F. 2d 311, 314 (1983). Accord, *Massachusetts Union of Public Housing Tenants, Inc.* v. *Pierce*, 244 U. S. App. D. C. 34, 36, 755 F. 2d 177, 179 (1985).

Congress responded to this split in the federal courts by explicitly adopting and ratifying the *McDonald* approach. S. Rep. No. 98–586, p. 16 (1984) ("The Committee believes that the interpretation of the court in *[McDonald]* is the correct one"). See also H. R. Rep. No. 98–992, p. 14 (1984) ("The term 'final judgment' has been clarified to mean a judgment the time to appeal which has expired for all parties"); H. R. Rep. No. 99–120, p. 18 (1985). There simply is no evidence to support the argument the Secretary now advances—that, in defining "final judgment" so as to resolve an existing problem, Congress also intended, *sub silentio*, to alter the meaning of the term to include a final agency decision. We conclude that, notwithstanding the 1985 amendment, Congress' use of "judgment" in 28 U. S. C. § 2412 refers to judgments entered *by a court of law*, and does not encompass decisions rendered by an administrative agency. Accordingly, we hold that a "final judgment" for purposes of 28 U. S. C. § 2412(d)(1)(B) means a judgment rendered by a court that terminates the civil action for which EAJA fees may be received. The 30-day EAJA clock begins to run after the time to appeal that "final judgment" has expired.

Our decision in *Sullivan* v. *Hudson*, 490 U. S. 877 (1989), is not to the contrary. The issue in *Hudson* was whether, under § 2412(d), a "civil action" could include administrative proceedings so that a claimant could receive attorney's fees

for work done at the administrative level following a remand by the district court. We explained that certain administrative proceedings are "so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award." *Id.*, at 892. We defined the narrow class of qualifying administrative proceedings to be those "where 'a suit [has been] brought in a court,' *and* where 'a formal complaint within the jurisdiction of a court of law' *remains pending and depends for its resolution upon the outcome of the administrative proceedings.*" *Ibid.* (emphasis added). *Hudson* thus stands for the proposition that in those cases where the district court retains jurisdiction of the civil action and contemplates entering a final judgment following the completion of administrative proceedings, a claimant may collect EAJA fees for work done at the administrative level. *Ibid.* "We did not say that proceedings on remand to an agency are 'part and parcel' of a civil action in federal district court for all purposes . . . ." *Sullivan* v. *Finkelstein, supra,* at 630–631.

## III

Having decided that EAJA requires a "final judgment" entered by a court, it is obvious that no "final judgment" was entered in this case before petitioner initiated his appeal. Petitioner filed a civil action in the District Court under 42 U. S. C. § 405(g), seeking review of the Secretary's decision that he was not entitled to disability benefits. Without ruling on the correctness of the Secretary's decision, the District Court remanded the case for further administrative proceedings. On remand, the Appeals Council awarded petitioner the disability benefits he sought. Neither petitioner nor the Secretary returned to the District Court for entry of a final judgment. The question we must decide now is whether either party is entitled to do so.

The answer depends on what kind of remand the District Court contemplated. In *Finkelstein*, we examined closely

the language of § 405(g) and identified two kinds of remands under that statute: (1) remands pursuant to the fourth sentence, and (2) remands pursuant to the sixth sentence. See 496 U. S., at 623–629. The fourth sentence of § 405(g) authorizes a court to enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." The parties agree that the remand order in this case was not entered pursuant to sentence four, as the District Court did not affirm, modify, or reverse the Secretary's decision. We concur. The District Court did not make any substantive ruling; it merely returned the case to the agency for disposition, noting that both parties agreed to this course.

The sixth sentence of § 405(g), as we explained in *Finkelstein*, "describes an entirely different kind of remand." *Id.*, at 626. The district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding. *Ibid.* The statute provides that following a sentence six remand, the Secretary must return to the district court to "file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based." 42 U. S. C. § 405(g).[1]

---

[1] Sentence six of § 405(g) provides in full:

"The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his

Petitioner argues, plausibly, that the court contemplated a sentence six remand. Indeed, it is undisputed that it was consideration of later-acquired evidence that led the Appeals Council ultimately to reverse its earlier decision and declare petitioner eligible for benefits from the date of his original application. Petitioner further argues that this must have been a sentence six remand because § 405(g) authorizes only two kinds of remands—those pursuant to sentence four and those pursuant to sentence six—and the Secretary concedes that this was not a sentence four remand.

The Secretary maintains that this was not a sentence six remand. While acknowledging that the remand request was prompted by the discovery of new evidence of disability, see Brief for Respondent 27–28, the Secretary observes correctly that the sixth sentence of § 405(g) requires a showing of "good cause" for the failure to present the additional evidence in the prior proceeding and that the District Court did not rule explicitly that such a showing had been made. The Secretary also notes that the District Court did not manifest any intent to retain jurisdiction, as would be the case under sentence six, but rather remanded to the agency "for all further proceedings."

The Secretary also disputes petitioner's assumption that sentences four and six set forth the only kinds of remands that are permitted under § 405(g), arguing that the district court has inherent authority to enter other types of remand orders. *Id.*, at 28–29, n. 23. On this point, we think petitioner has the better of the argument. As mentioned, in *Finkelstein* we analyzed § 405(g) sentence by sentence and identified two kinds of possible remands under the statute. While we did not state explicitly at that time that these were the *only* kinds of remands permitted under the statute, we do so today. Under sentence four, a district court may remand in

decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based."

conjunction with a judgment affirming, modifying, or reversing the Secretary's decision. Under sentence six, the district court may remand in light of additional evidence without making any substantive ruling as to the correctness of the Secretary's decision, but only if the claimant shows good cause for failing to present the evidence earlier.[2] Congress' explicit delineation in § 405(g) regarding the circumstances under which remands are authorized leads us to conclude that it intended to limit the district courts' authority to enter remand orders to these two types. Cf. *United States* v. *Smith*, 499 U. S. 160 (1991) (expressly enumerated exceptions presumed to be exclusive).

This reading of the statute is dictated by the plain language of § 405(g) and is supported by the legislative history. In amending the sixth sentence of § 405(g) in 1980, Congress made it unmistakably clear that it intended to limit the power of district courts to order remands for "new evidence" in Social Security cases. Pub. L. 96–265, § 307, 94 Stat. 458. The Senate Report accompanying the amendments explained:

> "[U]nder existing law the court itself, on its own motion or on motion of the claimant, has discretionary authority 'for good cause' to remand the case back to the ALJ. It would appear that, although many of these court remands are justified, some remands are undertaken because the judge disagrees with the outcome of the case even though he would have to sustain it under the 'substantial evidence rule.' Moreover, the number of these court remands seems to be increasing. . . . The bill would continue the provision of present law which gives the court discretionary authority to remand cases to the Secretary, *but adds the requirement that remand for the purpose of taking new evidence be limited to cases in which there is a showing that there is new evidence which*

---

[2] Sentence six also authorizes the district court to remand on motion by the Secretary made before the Secretary has filed a response in the action. That subcategory of sentence six remands is not implicated in this case.

*is material and that there was good cause for failure to incorporate it into the record in a prior proceeding."* S. Rep. No. 96–408, pp. 58–59 (1979) (emphasis added).

See also H. R. Rep. No. 96–100, p. 13 (1979) (same).

Congressman Pickle, one of the floor managers of the bill, echoed this explanation when he noted in a floor statement that with the amendment "we have tried to speed up the judicial process so that these cases would not just go on and on and on. The court could remand [them] back down to the ALJ without cause or other reason which was weakening the appeal process at that level." 125 Cong. Rec. 23383 (1979).

The amendment to sentence six, of course, was not intended to limit a district court's ability to order remands under sentence four. The House Report explains that "[t]his language [amending sentence six] is not to be construed as a limitation of judicial remands currently recognized under the law in cases which the Secretary has failed to provide a full and fair hearing, to make explicit findings, or to have correctly apply *[sic]* the law and regulations." H. R. Rep. No. 96–100, *supra*, at 13. Thus, under sentence four, a district court may still remand in conjunction with a judgment reversing in part the Secretary's decision.

It is evident from these passages that Congress believed courts were often remanding Social Security cases without good reason. While normally courts have inherent power, among other things, to remand cases, see *United States* v. *Jones,* 336 U. S. 641, 671 (1949), both the structure of § 405(g), as amended, and the accompanying legislative history show Congress' clear intent to limit courts to two kinds of remands in these cases. Cf. *Chambers* v. *NASCO, Inc., ante,* p. 32 (finding no congressional intent to limit a court's inherent authority to impose sanctions).

In light of the foregoing, we conclude that in § 405(g) actions, remand orders must either accompany a final judgment affirming, modifying, or reversing the administrative decision in accordance with sentence four, or conform with

the requirements outlined by Congress in sentence six. Construing remand orders in this manner harmonizes the remand provisions of § 405(g) with the EAJA requirement that a "final judgment" be entered in the civil action in order to trigger the EAJA filing period. 28 U. S. C. § 2412(d)(1)(B). In sentence four cases, the filing period begins after the final judgment ("affirming, modifying, or reversing") is entered by the court and the appeal period has run, so that the judgment is no longer appealable. See § 2412(d)(2)(G). In sentence six cases, the filing period does not begin until after the postremand proceedings are completed, the Secretary returns to court, the court enters a final judgment, and the appeal period runs.

Although we agree with petitioner that the district court's remand authority is confined to those circumstances specifically defined in § 405(g), we cannot state with certainty that the remand in this case was, as petitioner contends, a sentence six remand. As the Secretary points out, the District Court did not make a finding that "good cause" had been shown, nor did the court seem to anticipate that the parties would return to court following the administrative proceedings. Indeed, it may be that the court treated the joint request for remand as a voluntary dismissal under Federal Rule of Civil Procedure 41(a), although the parties did not file a signed stipulation, as required by the Rule. Because the record before us does not clearly indicate what the District Court intended by its disposition, we vacate the judgment and remand the matter to enable the District Court to clarify its order. If petitioner is correct that the court remanded the case under sentence six, the Secretary must return to District Court, at which time the court will enter a final judgment. Petitioner will be entitled to EAJA fees unless the Secretary's initial position was substantially justified, a question which was not addressed by the Court of Appeals. If, on the other hand, this was *not* a sentence six remand, it may be that petitioner is not entitled to EAJA fees at all. For

example, if the court's order was, in effect, a dismissal under Rule 41(a), the District Court's jurisdiction over the case would have ended at that point, and petitioner would not have been a prevailing party "in [a] civil action." 28 U. S. C. § 2412(d)(1)(A). Under those circumstances, the Secretary would not return to the District Court and petitioner would not be eligible to receive EAJA fees.

## IV

At oral argument the parties discussed the timeliness of petitioner's fee application. EAJA requires prevailing parties seeking an award of fees to file with the court, *"within thirty days of final judgment in the action,"* an application for fees and other expenses. § 2412(d)(1)(B) (emphasis added). Petitioner claims that this language permits him to apply for fees at any time *up to* 30 days after entry of judgment, and even before judgment is entered, as long as he has achieved prevailing party status. Tr. of Oral Arg. 16–18.

This case is not an appropriate vehicle for resolving the issue. If petitioner is correct that this was a sentence six remand, the District Court may determine that the application he has already filed is sufficient. Alternatively, petitioner can easily reapply for EAJA fees following the District Court's entry of a final judgment. In either case, petitioner will not be prejudiced by having filed prematurely. On the other hand, if this was not a sentence six remand, we have already explained that petitioner would not be entitled to fees, so the timeliness of the application will not be an issue.

The judgment of the Ninth Circuit Court of Appeals is vacated, and the case is remanded to the Court of Appeals with instructions to remand to the District Court for further proceedings consistent with this opinion.

*It is so ordered.*