Lewis J. **PARSONS,** Plaintiff,

v.

Louis W. **SULLIVAN, M.D.,** Secretary of Health and Human Services, Defendant.

No. C2–89–985.

United States District Court, S.D. Ohio, E.D.

March 9, 1992.

---

Paula Goodwin, Ben Sheerer Company, L.P.A., Cleveland, Ohio, for Lewis J. Parsons (plaintiff).

Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, for Louis W. Sullivan, M.D., Secretary of Health and Human Services (defendant).

## ORDER

GRAHAM, District Judge.

The Court has reviewed the Report and Recommendation of Magistrate Judge Kemp *de novo* in light of the defendant's objections. The Court finds the Report and Recommendation of the Magistrate Judge to be well reasoned and hereby accepts it in whole pursuant to 28 U.S.C. § 636(b)(1). Accordingly it is hereby ordered:

1. That the Secretary's response to the EAJA petition filed by plaintiff, construed as a motion to dismiss the application on grounds that it was not timely filed, be denied.

2. That the Clerk enter judgment in favor of the plaintiff based upon the receipt of the favorable decision on remand, and in accordance with the court's intent to retain jurisdiction over this case until remand proceedings were completed.

3. That the plaintiff's EAJA petition be deemed filed timely with respect to the judgment entered in favor of plaintiff.

4. That the Secretary be given 20 days from the date of the court's order to file a response to the EAJA petition on its merits.

It is so ORDERED.

## REPORT AND RECOMMENDATION

### December 2, 1991

TERENCE P. KEMP, United States Magistrate Judge.

### I.

This is a social security disability case. Plaintiff, Lewis J. Parsons, was originally denied disability benefits by an administrative decision which became final on October 4, 1989. He filed this case to contest the correctness of that decision.

In an Opinion and Order issued on October 29, 1990, this court remanded the case to the Secretary for further proceedings. The basis of that remand was a conflict between the Secretary's findings that, first, plaintiff was limited in his ability to bend and twist, and, second, that he could perform his previous job as an assembly line worker which required frequent bending and twisting. Because further administrative proceedings were required to resolve this conflict and to determine whether plaintiff was entitled to disability benefits, motions for summary judgment which had been filed by both parties were denied, and the case was remanded to the Secretary for further proceedings.

Further administrative proceedings culminated, first, in a favorable decision from an Administrative Law Judge on April 26, 1991, followed by adoption of that favorable decision by the Appeals Council on June 26, 1991. Plaintiff now contends that the initial denial of his application for benefits was not substantially justified, and that he is entitled to an award of attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Section 2412(d)(1)(B) of the EAJA requires that a

party seeking such an award shall submit an application "within 30 days of final judgment in the action...." Apparently concerned that the Administrative Law Judge's determination would be considered a "final judgment," and not wishing to file an untimely petition, plaintiff moved for fees under the EAJA on May 24, 1991. The Secretary, relying on the Sixth Circuit's decision in *Buck v. Secretary of Health and Human Services,* 923 F.2d 1200 (1991), attacked the EAJA petition as having been filed prematurely. In an order filed on June 21, 1991, the court agreed, and, in the interest of judicial economy, deemed the petition to be filed the day after the Appeals Council's adoption of the Administrative Law Judge's decision, which, under *Buck,* was the key event triggering the running of the 30–day period for filing an EAJA petition in a social security case.

Somewhat serendipitously, on June 10, 1991, the same day that the Secretary attacked this plaintiff's application as being premature, the Supreme Court decided *Melkonyan v. Sullivan,* —— U.S. ——, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). *Melkonyan* contains *dictum* supporting an argument that a "fourth-sentence" remand order (referring to the fourth sentence of 42 U.S.C. § 405(g)) is the triggering event for the time period for filing an EAJA petition. In a dramatic about-face, on July 16, 1991, the Secretary argued that plaintiff's EAJA petition should be dismissed because it was filed too late, and should have been filed within 90 days of the issuance of this court's October 29, 1990 remand order. This issue has been referred to me for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). For the following reasons, I recommend that the Secretary's request to dismiss the EAJA petition on grounds that it was untimely filed be denied, and that the Secretary be directed to respond to the petition on its merits.

## II.

■ Because of the complexities of the administrative system set up to review social security disability claims, it is not uncommon that statutes of more general application, such as the EAJA, use language and focus upon concepts which do not mesh neatly with the intricacies of social security adjudication. This is well-illustrated by the judicial review provision found at 42 U.S.C. § 405(g), which has been described by the Supreme Court as "somewhat unusual." *Sullivan v. Hudson,* 490 U.S. 877, 885, 109 S.Ct. 2248, 2254, 104 L.Ed.2d 941 (1989). Unlike the Administrative Procedure Act, § 405(g) "suggest[s] a degree of direct interaction between a federal court and an administrative agency alien to traditional review of agency action...." *Ibid.* In particular, § 405(g) has been interpreted to restrict the court's ability to remand matters to the Secretary by specifying in detail both the substantive prerequisites for remands and the procedure to be followed. The focus of Supreme Court decisions construing § 405(g) and the EAJA, and particularly *Melkonyan,* make it important to characterize the remand order of October 29, 1990 in terms of remands authorized by § 405(g). The appropriate starting point, of course, is the language of the statute itself.

42 U.S.C. § 405(g) provides in pertinent part:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, ... may obtain a review of such decision by a civil action.... *The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.... The court may, on motion of the Secretary for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and* the Secretary shall, after the case is remanded, and

after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based." (Emphasis supplied to the fourth sentence and the beginning of the sixth sentence).

In this case, the court did not remand the case either on motion of the Secretary or order additional evidence to be taken after a showing that new and material evidence had not, for good cause, been incorporated into the record. Thus, the court's order cannot properly be interpreted as a "sixth sentence" remand. Rather, it is more properly construed as a decision "reversing the decision of the Secretary, with ... remanding the cause for a rehearing," as provided in sentence four of § 405(g).

As the Supreme Court stated in *Melkonyan*, § 405(g) demonstrates "Congress' clear intent to limit courts to two kinds of remands" in social security cases. *Melkonyan*, 111 S.Ct. at 2162. Although cases prior to *Melkonyan* have suggested that the courts have inherent power to remand cases to the Secretary without regard to the limitations contained in § 405(g), *Melkonyan* rejects that assertion, and in any event it appears entirely proper to characterize the remand order in this case as having been entered under sentence four of § 405(g) rather than pursuant to the court's inherent power.

That characterization, however, is the first link in the chain which the Secretary has attempted to forge in order to corral the plaintiff's EAJA petition. Following the *dictum* in *Melkonyan* that a sentence four remand must accompany a "final judgment affirming, modifying or reversing the administrative decision," and that "[i]n sentence four cases, the filing period [for an EAJA petition] begins after the final judgment ("affirming, modifying, or reversing") is entered by the court and the appeal period has run," *Melkonyan*, at 2165, the Secretary argues that in this particular

case, plaintiff's EAJA petition was due not more than 90 days after October 29, 1990. If *Melkonyan's dictum* were the only relevant pronouncement, I might be persuaded by the Secretary's argument. However, apart from the fact that *Melkonyan* expressed no holding relevant to sentence four remand cases, since the remand in *Melkonyan* was either a sentence six remand or a voluntary dismissal, I conclude that *Melkonyan* must be harmonized with the Supreme Court's previous holding in *Sullivan v. Hudson, supra*, and that such harmonizing requires the court to consider the merits of plaintiff's EAJA petition.

### III.

The recent history of the tension between the EAJA's "final judgment" requirement and § 405(g) begins with the Supreme Court's decision in *Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). The precise issue in *Hudson* was whether attorneys' fees could be recovered under the EAJA for work done at the administrative level following a court-ordered remand. In deciding that issue, the court first considered the language of the EAJA, which permits only a "prevailing party" to seek an award of attorneys' fees. In fact, 28 U.S.C. § 2412(d)(1)(B) appears to require a party seeking an award of fees to make a *showing* in his application "that the party is a prevailing party and is eligible to receive an award under this subsection...." The same statutory subsection requires the application to include an itemized statement of attorneys' fees. *Hudson* recognized that, in social security cases as in other administrative matters, prevailing party status often cannot be determined until proceedings on remand have been completed. In such a case, a procedural ruling such as an order of remand is not a matter on which a party can prevail; thus, it is "clear that ... a Social Security claimant would not, as a general matter, be a prevailing party within the meaning of the EAJA merely because a court had remanded the action to the agency for further proceedings." *Hudson, supra* at 887, 109 S.Ct. at 2255. The Supreme Court also

noted that the "vast majority" of the Courts of Appeals agreed with this conclusion. Applying these principles to the precise issue under review (which did not include a challenge to the timeliness of the EAJA application), the court concluded that administrative proceedings after remand were "part and parcel" of the civil action itself and that no final determination, for purposes of the EAJA, would have been rendered until remand proceedings were complete. Significantly, the *Hudson* court also noted with apparent approval the practice of lower courts to "retain jurisdiction over the action pending the Secretary's decision and its filing with the court," and commented that "[t]he court retains the power in such situations to assure that its prior mandate is effectuated." *Hudson, supra* at 886, 109 S.Ct. at 2254.

*Hudson* was followed, almost exactly a year later, by *Sullivan v. Finkelstein,* 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). The issue presented in *Finkelstein* was whether a remand order issued under § 405(g) which contemplated further administrative proceedings could nonetheless be considered a "final judgment" for appeal purposes under 28 U.S.C. § 1291. Eight of the nine Justices, including Justice O'Connor, who wrote *Hudson,* agreed that, in at least some sentence four remand cases, the remand order was a final judgment for purposes of appeal. In that case, the District Court had remanded for further proceedings because it concluded that a regulation used by the Secretary to adjudicate spouses' disability insurance benefit claims was invalid. The court reasoned that if no appeal were available from that type of remand order, the District Court's order would essentially be unreviewable because, if the remand proceedings resulted in a decision favorable to the claimant, no further appeal would lie.

Obviously, there is a suggestion of tension between *Finkelstein* and *Hudson.* The court dealt with that tension not by either overruling or limiting *Hudson,* but by noting the differences in purpose between 28 U.S.C. § 1291 and the EAJA. The court reemphasized its recognition in *Hudson* that a claimant obtaining a re-

mand from the District Court is not ordinarily considered to be a prevailing party and that to require a claimant to file an EAJA application before his or her status as a prevailing party could be known would run counter to the remedial purpose of the EAJA. *Finkelstein,* 110 S.Ct. at 2666. Thus, after *Finkelstein,* it was reasonable for the courts to assume that "final judgment" under the EAJA means one thing, and under § 1291 something entirely different.

As usual, the task of sorting out the implications of the Supreme Court's pronouncements in *Hudson* and *Finkelstein* fell to the lower courts in the first instance. The Sixth Circuit dealt with the issue twice in 1991. First, in *Buck v. Secretary of Health and Human Services,* 923 F.2d 1200 (6th Cir.1991), the Court dealt directly with the issue of when an EAJA application must be filed following a fourth-sentence remand and a favorable administrative decision. There, the application for fees was filed 45 days after the Appeals Council's final decision in favor of the claimant. The court held that the application was untimely, not because the initial order of remand was the event which started the clock running, but because the Secretary's fully favorable decision should be construed to be a "final judgment." As the court noted, the district courts have been somewhat inconsistent in retaining jurisdiction and ultimately entering judgment following a fourth-sentence remand. Concluding that a district court does not necessarily retain jurisdiction each time a fourth-sentence remand was ordered, even for limited purposes, so that a subsequent District Court order confirming the Secretary's award of benefits is not automatic, the court reasoned that to await such a decision would be to suspend the EAJA time limits indefinitely in a vast number of cases. The Sixth Circuit considered, especially in footnote 5, the possibility that the remand order itself started the EAJA time limit running, but concluded that *Finkelstein* and *Hudson,* read together, supported just the opposite result.

The Court of Appeals had occasion to apply *Buck* in a decision decided and filed only two weeks before the plaintiff in this case filed his fee application. In *Peters v. Secretary of HHS*, 934 F.2d 693 (6th Cir. 1991), the claimant had received a favorable decision on remand but filed an application for attorneys' fees more than 30 days thereafter. The Court of Appeals held that the application was untimely because the Secretary's decision on remand was a "final judgment" for purposes of the EAJA. That was so, the court stated, because the Secretary's decision was a completely favorable one, and because the District Court did not retain jurisdiction after remand in order to monitor the case. The Court clearly believed that the provision of § 405(g) under which the case was remanded, and the District Court's intent, were both significant. The *Peters* court noted that the remand was based upon the fifth sentence of § 405(g) which, in the court's words, "does not require a District Court to monitor the remand," and that the District Court did not "choose to retain jurisdiction and monitor the remand." *Peters*, 934 F.2d at 695. Under those particular circumstances, the Secretary's final decision, rather than any subsequent action by the court, started the EAJA clock running.

Here, plaintiff, faithful to *Buck* and *Peters*, filed an EAJA application within 30 days of the date that the Secretary indicated a favorable decision was forthcoming. In fact, out of an abundance of caution, it appears that the plaintiff filed early in the sense that he treated the Administrative Law Judge's recommended decision, rather than the Appeals Council's adoption of that decision as the final judgment. Nevertheless, because of this court's subsequent order deeming the application filed one day after the Appeals Council's action, plaintiff's application was clearly filed timely under *Buck* and *Peters*. It was also filed prior to the decision in *Melkonyan*, although under the construction of *Melkonyan* urged by the Secretary, plaintiff would had to have filed the fee application well before the Administrative Law Judge rendered a favorable decision, a requirement that plaintiff clearly could not have

anticipated. With this background in mind, I now turn to the question of whether *Melkonyan* should be interpreted to bar this plaintiff from having the merits of his EAJA application heard.

## IV.

As explained above, *Melkonyan* did not hold that an EAJA application filed more than 90 days after the issuance of a fourth-sentence remand order was untimely. Rather, it concluded that the remand order issued in that case was not a fourth-sentence remand order, and that further proceedings at the District Court level were required to determine exactly what type of remand had been ordered. In reaching that conclusion, however, the Court made statements about the nature of § 405(g) and its relationship with the EAJA which, in all candor, support the Secretary's argument in this case. Rather than choosing to disregard these statements as mere *dictum*, which they are, I believe that it is possible to reconcile *Melkonyan* with *Hudson* and *Finkelstein*, and to reject, on principled grounds, the obvious inequity of allowing this plaintiff to be whipsawed between clearly binding judicial decisions in such a way that the merits of his application can never be reached.

The most troubling language in *Melkonyan* is the following:

> "[W]e conclude that in § 405(g) actions, remand orders must either accompany a final judgment affirming, modifying, or reversing the administrative decision in accordance with sentence four, or conform with the requirements outlined by Congress in sentence six. Construing remand orders in this manner harmonizes the remand provisions of § 405(g) with the EAJA requirement that a "final judgment" be entered in the civil action in order to trigger the EAJA filing period. 28 U.S.C. § 2412(d)(1)(B). *In sentence four cases, the filing period begins after the final judgment ("affirming, modifying or reversing") is entered by the court and the appeal period has run, so that the judgment is no longer appealable.*"

*Melkonyan,* 111 S.Ct. at 2165. (Emphasis supplied). Because the instant case involves a sentence four remand, if the remand order must be construed as a "final judgment" within the meaning of the EAJA, it would seem that plaintiff was required to file his application within 90 days after October 29, 1990. Without a significant amount of elaboration (the Secretary's brief in this case is only five pages long), and without considering the extent to which this interpretation of *Melkonyan* undercuts all of the policy considerations explained in *Hudson,* the Secretary argues for that result.

That construction of *Melkonyan* raises grave doubts about the proper interpretation of other parts of the EAJA. For example, *Melkonyan* does not address *Hudson's* conclusion that a party who has obtained a sentence four remand may not be a "prevailing party" within the meaning of the EAJA. If that conclusion is still good law, the Secretary's interpretation of *Melkonyan* would require a social security claimant to file an EAJA petition at a time when he cannot, in good faith, assert that he is the prevailing party in the litigation, and at a time where he cannot itemize the attorneys' fees sought to be recovered because such fees are still being expended at the administrative level. One way around that conundrum would be to require every claimant who obtains a sentence four remand to make a "protective" EAJA filing within 90 days thereafter, and then to supplement the filing if the claimant prevails after remand. Apart from the fact that protective filings do not appear to be contemplated by the EAJA, § 2412(d)(1)(B) clearly requires the application to show prevailing party status. Thus, a "protective filing" not only appears not to have been contemplated by the drafters of the EAJA, but would require a party to file a petition which cannot possibly comply with the statutory mandate. Additionally, it would create the anomalous situation of having EAJA applications filed by claimants who will never obtain prevailing party status. It would indeed be an unusual interpretation of the EAJA to require such filings in large numbers of cases where the

petition will be subject to automatic dismissal after further administrative proceedings. Notwithstanding the flexibility which some courts have attributed to principles of statutory construction, it does not appear proper to construe the EAJA in a way to require the filing of numerous premature, deficient, and unnecessary applications when there is nothing in the statutory language to suggest that requirement. By the same token, interpreting *Melkonyan* in that fashion should be resisted if there are other rational ways of following the Supreme Court's lead.

Additionally, if *Melkonyan* is to be interpreted as the Secretary argues, *Hudson* would have been effectively overruled. Given the fact that the policies of liberal interpretation of the EAJA have not changed drastically in the last two years, and given further the fact that Justice O'Connor authored both *Hudson* and *Melkonyan,* one would expect that had *Melkonyan* been intended to overrule or eviscerate *Hudson,* the opinion would have contained some language to that effect. It does not. Rather, *Hudson* was cited with apparent approval.

In discussing the continued vitality of *Hudson, Melkonyan* states the following. First, it rejected an argument that *Hudson* supported the position taken by the lower court in *Melkonyan* (and followed by the Sixth Circuit in *Buck*) that an administrative decision could be a "final judgment" for purposes of the EAJA. According to the court, "judgment" must mean a judgment entered by a court of law. That being so, however, *Hudson* continued to apply in what the court described as a "narrow class" of administrative proceedings. That narrow class consists of those where " 'suit has been brought' ... *and* 'where a formal complaint remains pending and depends for its resolution upon the outcome of the administrative proceedings.' " *Melkonyan,* 111 S.Ct. at 2162, *quoting Hudson,* 490 U.S. at 892, 109 S.Ct. at 2257. Under those circumstances, where the District Court has retained jurisdiction and contemplates entering a final judgment following the completion of ad-

ministrative proceedings, an EAJA petition at a later date is proper.

Given *Melkonyan's* apparent approval of *Hudson*, a *per se* rule that EAJA applications must be filed in all sentence four remand cases within 90 days of the date of the order of remand cannot be implied. Rather, the following conceptual scheme should apply to § 405(g) remands and EAJA petitions. A sentence four remand is always accompanied by a "judgment" because, according to *Melkonyan*, remand orders under that sentence *must* accompany a *final* judgment. In those cases where the district court does not retain jurisdiction or contemplate the entry of an additional order following judgment and remand, the time for filing an EAJA petition begins to run when the judgment is entered. Presumably, that will include cases where the final outcome of the case is not dependent upon the resolution of the administrative proceedings—i.e., that prevailing party status can be determined simply based upon the order of remand. In other cases, such as the one presented in *Hudson*, the District Court's ultimate resolution of the case does depend on the outcome of the proceedings on remand. There, a further judgment entry is contemplated, and it is the entry of that judgment which triggers the EAJA time period. As *Finkelstein* teaches, the earlier judgment may be appealable for purposes of § 1291, but it would not be a "final judgment" within the meaning of the EAJA because those concepts remain distinct.

It is possible to interpret *Melkonyan* to limit the continued vitality of *Hudson* to sentence six remand cases. However, apart from the fact that *Hudson* itself involved a sentence four remand, and the fact that there is no requirement that "judgment" be entered in conjunction with a sentence six remand, such an interpretation is flatly inconsistent with the policy goals identified in *Hudson*. A sentence six remand can be ordered only upon motion of the Secretary or upon a showing that new and material evidence exists which, for good cause, was not previously presented. In those cases, it is relatively unlikely that the Secretary's denial of benefits will be deemed not to have been substantially justified. A much more common scenario for awarding fees under the EAJA involves a claim that the Secretary misapplied applicable law or made inconsistent and irreconcilable factual findings, such as occurred in this case, so that a sentence four remand is required in order to produce a correct, although not necessarily favorable, administrative decision. If *Hudson* no longer applies to sentence four remand cases, the vast majority of meritorious EAJA claims will either be foreclosed, or will be subject to the "protective" filing procedures described above. Again, that result is so at odds with the policies identified in *Hudson* and the decision rendered in that case that only an explicit overruling of *Hudson* would convince me that *Melkonyan* should be so interpreted. My interpretation is also consistent with the Sixth Circuit's decision in *Peters*, which noted the connection between the District Court's intent to retain jurisdiction and the EAJA timeliness inquiry. Consequently, I conclude that after *Melkonyan*, an EAJA petition must be filed within 30 days after a District Court's decision adopting a fully favorable decision after remand, assuming that the District Court's remand order contemplated, either explicitly or implicitly, the retention of jurisdiction to enter such an order.

## V.

Having settled upon an interpretation of *Melkonyan* which does not automatically require dismissal of plaintiff's EAJA petition, I must now consider whether this case involves a sufficient retention of jurisdiction to fit within the category of sentence four remand cases which are still covered by the *Hudson* rule. For the following reasons, I conclude that the court intended to retain jurisdiction in this case, and that although it may be a better practice in the future to make that retention of jurisdiction explicit when it is intended, the court's failure to do so in this case is not fatal to the retention of jurisdiction.

Ordinarily, the analysis of the court's intention would begin with the judgment entry. In this case, there is no separate

judgment entry, but only the court's opinion and order of October 29, 1990. It might be argued (although no one has argued here) that the absence of a judgment entry on a separate document, which is seemingly required by the language in Fed. R.Civ.P. 58 that "every judgment shall be set forth on a separate document" is, by itself, dispositive of the issue. If there has not been a judgment, there cannot be a "final judgment" for purposes of the EAJA. There are two flaws in that argument.

First, *Melkonyan* clearly states that a sentence four remand order may be issued only in conjunction with a "judgment." If the court's opinion and order of October 29, 1990 is construed as something other than a judgment, under *Melkonyan* it is completely ineffective because its entry would have exceeded the court's statutory authority under § 405(g). Second, the requirement of Rule 58 that every judgment be set forth on a separate document is not so absolute as to preclude the interpretation of the court's opinion and order of October 29, 1990 as a judgment. When dealing with situations other than the jurisdictional prerequisite for an appeal, which requires an almost mechanical application of the "separate entry" rule, see *Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir.1989), *cert. denied* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990), the Sixth Circuit has adopted a "common-sense" application of Rule 58 rather than a technical application as long as no parties have been misled. *Falls Stamping and Welding Co. v. International Union, United Automobile Workers*, 744 F.2d 521, 526 (6th Cir.1984). In that case, the court focused, *inter alia,* on the court's intention that the order be effective and the parties' apparent understanding that the order was so intended. Here, the parties both understood that a fourth-sentence remand had been ordered, since the Secretary conducted the additional proceedings on remand and the plaintiff participated. It was clearly the court's intention that they do so, even though no separate entry of judgment was filed.

Having concluded that the court's remand order complied sufficiently with 42 U.S.C. § 405(g) and Rule 58, the next question is whether it can be interpreted to have retained jurisdiction over this case. The order does not explicitly mention retention of jurisdiction, perhaps because, prior to *Melkonyan,* nothing of consequence turned on an express prior determination to retain jurisdiction following completion of proceedings on remand. However, the language of the order itself, and this court's usual practice, convinces me that retention of jurisdiction was intended.

First, the order of remand was entered after both parties had moved for summary judgment. Both motions were expressly denied, and the case was remanded. Under those circumstances, it is reasonable to conclude that the court intended to retain jurisdiction to grant a motion for summary judgment in favor of one of the parties when that became appropriate. This intent is illustrated by the court's usual practice in cases where a partially favorable, or unfavorable, decision is rendered on a remand. In those cases, the court conducts further proceedings in the case without requiring the filing of a motion for relief from judgment under Rule 60(b). If the court did not intend to retain jurisdiction to enter a ruling following the completion of remand proceedings, it would have no authority simply to continue to assess the validity of the parties' respective positions after remand was completed unless a motion for relief from judgment was tendered, and an appropriate showing was made.

The fact that it is not a typical practice of this court to enter an additional judgment when a plaintiff receives a fully favorable decision on remand does not militate against this conclusion. In such cases, because the plaintiff has received an award of benefits, there is simply no incentive for the plaintiff to return to court and ask that its motion for summary judgment then be granted. In those cases, the court's retention of jurisdiction might well expire after some period of time (perhaps the 65–day period under Rule 405(g)), and at some point the court's decision could ultimately be considered to be a final and nonappealable judgment in favor of the plaintiff.

The uncertainty surrounding the expiration of the court's jurisdiction under those circumstances led the Sixth Circuit to conclude, in *Buck,* that the Secretary's final decision is the "final judgment," but that rule may well have been vitiated by *Melkonyan.* It is unnecessary to decide, in the context of this case, exactly when an EAJA petition must be filed in a case where jurisdiction is retained and a fully favorable decision is rendered. It would be a salutary practice in such cases for the court simply to enter judgment in favor of the plaintiff following notice from the Secretary that a fully favorable decision has been rendered. That action would clearly trigger the EAJA's limitations period. However, in this case, since a petition was filed immediately after the Secretary's favorable decision was rendered, no issue of untimeliness (other than prematurity) exists.

Given *Melkonyan,* I would recommend that the following procedure be adopted in this case. Because the court has become aware of a fully favorable decision, the plaintiff's previous motion for summary judgment should now be granted, and a judgment should be entered in favor of the plaintiff. Plaintiff's EAJA application should be deemed filed after the date the judgment is entered, if the court concludes that its earlier filing would render it premature under the EAJA. In either event, the Secretary should then be directed to respond to the petition on its merits, and the court should render a decision.

## VI.

Based upon the foregoing, I respectfully recommend the following:

1.  That the Secretary's response to the EAJA petition filed by plaintiff, construed as a motion to dismiss the application on grounds that it was not timely filed, be denied.

2.  That the Court enter judgment in favor of the plaintiff based upon the receipt of the favorable decision on remand, and in accordance with the court's intent to retain jurisdiction over this case until remand proceedings were completed.

3.  That the plaintiff's EAJA petition be deemed filed timely with respect to the judgment entered in favor of plaintiff.

4.  That the Secretary be given 20 days from the date of the court's order to file a response to the EAJA petition on its merits.

## VII.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate with instructions. 28 U.S.C. Section 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).