NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0099n.06
Filed: November 18, 2004

No. 03-6242

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| BURMAH McCLAIN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| COMMISSIONER of SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: MOORE and SUTTON, Circuit Judges; ADAMS, District Judge.[*]

PER CURIAM. Burmah McClain challenges the Social Security Commissioner's denial of disability benefits, arguing that the administrative law judge's (ALJ's) decision improperly discredited her subjective allegations of pain and her treating physician's assessment of the severity of her disabilities, including fibromyalgia. After full briefing but before oral argument, the Commissioner filed a motion to remand the case for further consideration at the administrative level.

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

No. 03-6242
*McClain v. Comm'r of Soc. Sec.*

In view of the fact-bound and record-bound nature of the parties' dispute, we remand the case for further findings by the Commissioner.

I.

McClain was born on October 24, 1953, and has a high school education. Before her injury, she held jobs as a press machine operator and a teacher's assistant.

In January 1995, a speaker fell on her shoulder and back while she was attending a basketball game. She visited Dr. Robert Winston, her treating physician, on January 21, 1995. She complained of pain, swelling and numbness in various parts of her body. The doctor found tenderness and some limited motion. McClain continued to see Dr. Winston through December 17, 1999, for pain control including trigger-point injections.

In October 1995, Dr. Winston referred McClain to an orthopedic surgeon, Dr. R. J. Hornsby. On December 19, 1995, Dr. Hornsby noticed improvement in her neck and back, and a November 21,1996, myelogram and CT scan revealed no evidence of significant disc herniation or bulge. The tests, however, did reveal something amiss: The L4-5 disc material appeared to abut the exiting nerve roots. Yet no evidence of significant nerve root impingement appeared.

Dr. Winston referred McClain to a neurosurgeon, Dr. H. Glenn Barnett, who examined McClain on December 12, 1996. Dr. Barnett found no significant abnormalities, but he did give a poor prognosis based on McClain's continuing complaints of pain.

In 1997, Dr. Winston diagnosed McClain with contusions to the upper shoulder and back, chronic cervical sprain, two bulging lumbar discs, left and right leg radiculopathy, and fibromyalgia. Two years later, in a report dated March 1, 1999, Dr. Winston again diagnosed fibromyalgia and other impairments. He referred to McClain's pain level as both moderate and severe. He noted that McClain had not worked since the injury, that she had moderate pain in the back and both legs, that she sometimes had trouble getting out of bed and that her left leg gave out occasionally causing her to fall. He concluded that McClain was disabled and unable to engage in any gainful activity.

On February 9, 2000, McClain underwent a disability evaluation. The unsigned evaluation included a finding that McClain had pain at twelve trigger points. Finding pain at eleven or more of eighteen trigger points, it bears noting, can lead to a proper fibromyalgia diagnosis. *See* Memorandum from Deputy Commissioner for Disability and Income Security Programs to Administrative Law Judge Verrell L. Dethloff (May 11, 1998) (McClain Br. at 34) ("Memorandum"). The examiner concluded that McClain was unable to engage in any type of gainful employment because she could not lift more than five to eight pounds occasionally or sit more than one and a half hours at a time.

On a Medical Source Statement dated February 10, 2000, Dr. Winston stated that McClain could lift less than ten pounds, could neither stand nor walk for more than two hours in an eight hour day and could sit for no more than three hours. He added that McClain could not climb, balance, stoop, crouch, kneel or crawl, and that she had limited ability to reach, handle, push and pull.

McClain testified at her administrative hearing of pain, numbness and resultant trouble sleeping. She testified that her legs gave out without warning, and that she could only stand for about ten minutes. She said she could walk a couple of miles at a time, but had problems sitting due to her pain. On a typical day, she testified, she took a bath, exercised, made her bed, washed dishes and cooked. She also said she could drive up to 50 miles without significant problems.

At the initial level of the administrative-review process for McClain's application, a non-treating, non-examining medical consultant who reviewed the record disagreed with Dr. Winston. The consultant stated that McClain could lift twenty pounds occasionally and ten pounds frequently, could stand or walk for six hours in an eight-hour work day and could sit for six hours in an eight-hour work day, with postural tasks (climbing, balancing, stooping, kneeling, crouching and crawling) limited to one-third of an eight-hour work day.

At the reconsideration level, a second non-treating, non-examining medical consultant, Dr. Jones, agreed with all of the first consultant's conclusions, except the postural task limitations, which Dr. Jones found to be limited only to two-thirds of an eight-hour work day. Dr. Jones specifically referenced, among other parts of the medical record, the negative 1996 myelogram and CT report.

The ALJ followed the familiar five-step evaluation of 20 C.F.R. §§ 404.1520 and 416.920, finding that (1) McClain had not engaged in substantial gainful activity since her alleged onset date; (2) she had severe medically determinable impairments of fibromyalgia and degenerative spinal

disease; (3) her impairments did not qualify as presumptive disabilities because they did not meet the level of severity described for any impairment listed in Appendix 1, Subpart P, Regulation 4; (4) she could no longer perform past relevant work (based upon a lack of evidence regarding the exertional requirements of her past work); and (5) she was not disabled because the government had shown that she could perform a sufficient number of jobs in the national economy in view of her age (46 at the time), high-school education and residual-functional capacity. As to this last conclusion, the ALJ also found that she had the residual functional capacity to perform a wide range of light work. Under the Medical-Vocational Guidelines, Rule 202.20, an applicant with these characteristics is not disabled. In determining McClain's residual functional capacity, the ALJ relied on all of the medical opinions in evidence, the underlying medical records and McClain's subjective allegations (which the ALJ partially discounted given his finding that they were not entirely credible).

The Appeals Council did not review the ALJ's decision. McClain brought this action in district court for review of the ALJ's decision. The district court affirmed the ALJ's decision, and McClain appealed to this court, contending that the ALJ erred in using negative medical findings to discredit the treating physician's opinion and McClain's subjective allegations of pain.

II.

After the parties had filed their appellate briefs but before oral argument, the Commissioner filed a motion under 42 U.S.C. § 405(g) to enter a judgment reversing and remanding the case to the

No. 03-6242
*McClain v. Comm'r of Soc. Sec.*

Commissioner. *See Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993); *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991). "This case should be remanded," the Commissioner asserted, "because when there has been a misapplication of the regulations or when there is not substantial evidence to support one of the ALJ's factual findings, the appropriate remedy is remand under sentence four of 42 U.S.C. § 405(g) for further consideration." Appellee's Motion to Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g), at 3. *See Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994). In response, McClain argues that we should deny the motion. In her view, the court should reverse the ALJ's decision and immediately award benefits because "all 'essential factual issues' have been resolved and there is a clear entitlement to benefits on the record as it now stands." Resp. to Defendant-Appellee's Mot. for Entry of J. Pursuant to Sentence Four of 42 U.S.C. § 405(g), at 2.

While we have the authority to take the course that McClain proposes, *see Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171 (6th Cir. 1994), we do not think that this is an appropriate disability-benefits application for doing so. The deferential standard of review applicable to these cases generally counsels in favor of hearing from the ALJ first. *See* 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."); *Faucher*, 17 F.3d at 176 ("A *judicial* award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is

No. 03-6242
*McClain v. Comm'r of Soc. Sec.*

lacking.") (emphasis added). And the difficulty of benefits applications premised on fibromyalgia—where the applicant may experience disabling pain but have difficulty pointing to clinical tests that explain why—particularly favors hearing from the Commissioner and correcting any errors in the administrative record before the federal courts review an application. *See Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817–18 (6th Cir. 1988). The case, accordingly, is remanded to the Commissioner to correct any misapplication of the regulations and to determine whether substantial evidence supports the ALJ's findings.