Debra **TRUDELL** on behalf of Aaron A. **BUSHONG**, a minor, Plaintiff,

v.

Kenneth S. **APFEL**, Commissioner of Social Security, Defendant.

No. 99–CV–10206–BC.

United States District Court, E.D. Michigan, Northern Division.

Feb. 1, 2001.

Lewis M. Seward, Seward, Tally, Bay City, MI, for Plaintiff.

Karen M. Gibbs, United States Attorney's Office, Detroit, MI, for Defendant.

***OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO REMAND***

LAWSON, District Judge.

The plaintiff, Debra Trudell, has filed a complaint of her minor son, Aaron Bushong, seeking review of the denial of her claim for supplemental security income benefits for Aaron. The case was referred to Magistrate Judge Charles E. Binder by this Court's predecessor, the Honorable Victoria A. Roberts, pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). The plaintiff filed a motion for summary judgment seeking a reversal of the Commissioner's decision and remand for an award of benefits. The defendant filed a motion to remand the case to the agency for further proceedings, acknowledging that the decision of the Commissioner is not supported by substantial evidence on the whole record. The Magistrate Judge filed a Report and Recommendation on July 19, 2000 recommending that the plaintiff's motion be denied and the defendant's motion be granted. The plaintiff filed timely objections to the Report and Recommendation, to which the defendant replied and the plaintiff rejoined. This Court has reviewed the matter *de novo.* 28 U.S.C. § 636(b)(1). Although both parties agree that the decision of the Commissioner is not supported by substantial evidence, because the Court finds that all material fact issues have been addressed and resolved and there is no need for additional evidence, the motion to remand for further proceedings shall be **DENIED.** Further, the Court finds that the proof of plaintiff's disability is overwhelming; therefore, the plaintiff's motion for summary judgment will be **GRANTED** and the case remanded for an award of benefits.

## I.

Aaron Bushong, born August 25, 1980, had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) since he was eight years old. He was subsequently diagnosed with asthma, low intellectual functioning and depression. From the time he was in fifth grade, Aaron had been considered a learning disabled student by the Midland Public School System where he attended school. In January, 1995 a multi-disciplinary evaluation team performed a comprehensive reevaluation of Aaron. Although his intelligence quotient was considered average, the team found a "severe discrepancy between achievement and intellectual ability in written expression and reading comprehension." (Tr. at 172.) The report concluded:

This discrepancy between ability and achievement is not primarily the result of visual, hearing, or motor handicap, mental retardation, or emotional disturbances. The determination of impairment was not based solely on behaviors relating to environmental, cultural, or economic differences.

Aaron's disability appears to be a characteristic of a special learning disability rather than any of the above factors which adversely affects his education performance in the regular classroom.

(*Id.*)

During his ninth-grade year, Aaron's development took an unfortunate turn. As described by his mother,

August 95–June 96/Ninth grade was a nightmare in *hell* for Aaron. Aaron couldn't understand what was happening or what was going on. The whole year was terrible. Aaron never learned anything and blocked out everything around him. Due to school staff excusing of drugs, grabbing, threatening, pushing Aaron around; and even other students hitting, threatening and pushing Aaron's family around. Aaron couldn't understand what to do or to come tell mom. Aaron cut up his arm. He went downhill more and more the whole year. I believed Aaron never learned anything the whole year.

(Tr. at 300–301, emphasis in original.)

As a 15–year–old, Aaron suffered severe emotional difficulties as a result of his learning disabilities. He engaged in self-mutilation. As described by Dr. Charles Nixon who saw Aaron in the fall, 1995, "[Aaron] came to me following the carving of his forearms with a razor blade due to fears that he had concerning school mates and his inability to function in a mainstream situation ." (Tr. at 181.)

School activity questionnaires completed by Aaron's special education teachers consistently described Aaron as having difficulty establishing and maintaining friendships in school, a short attention span, difficulty accurately recording reality, and requiring constant supervision because of his difficulty doing anything on his own. (Tr. at 183–84, 200, 222–23, 239–40.) One teacher noted that Aaron "would benefit greatly if awarded SSI." (Tr. at 184.)

Aaron's mother, Mrs. Trudell, filed a claim with the Social Security Administration on Aaron's behalf on October 23, 1995. The claim was denied initially and upon reconsideration. The Commissioner considered depression and ADHD as possible bases of disability, although the claim was rejected.

The matter was reviewed *de novo* by Administrative Law Judge (ALJ) John A. LaFalce on November 5, 1997. The ALJ filed a decision on December 18, 1997 concluding that Aaron was not entitled to benefits. Mrs. Trudell requested a review of this decision on December 30, 1997.

The Appeals Counsel denied the request for review on March 5, 1999, and the ALJ's decision thereby became the final decision of the Commissioner. Mrs. Trudell filed the instant suit on Aaron's behalf in this court on May 3, 1999, and, as noted earlier, Magistrate Judge Binder issued a Report and Recommendation on the parties' cross-motions that were subsequently filed.

## II.

The Magistrate Judge has ably set forth the applicable law and issues presented by the ALJ's findings in section II(C) and (D) of the Report and Recommendation, which are adopted and incorporated herein. To summarize, current legislation requires that, in order to establish a right to benefits, a child must prove that he or she has a "medically determinable physical or mental impairment, which results in marked or severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). Analysis of a child's claim of disability requires three sequential steps: first, a child will be found not disabled if he or she is engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). Second, if a child does not have an impairment or combination of impairments that is severe, the child will not be found disabled. 20 C.F.R. § 416.924(c). Third, a child will be found to be disabled if he or she has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. B. 20 C.F.R. § 416.924(d).

If an impairment does not "meet" a listed impairment, disability may nonetheless be established if the child's impairment is medically or functionally equivalent to a listed impairment. The plaintiff in this case does not contend that she can establish medical equivalence. Rather, plaintiff's claim is that Aaron's disability is

functionally equivalent to a listed disability. Further, the plaintiff does not allege a limitation of a specific function, but rather contends that the record establishes a disability in broad areas of development or functioning under 20 C.F.R. § 416.926a(b)(2).

Based upon the claim, then, the ALJ was called upon to consider five broad areas of development or functioning:[1] cognition and communication; motor ability; social ability; personal ability; and concentration, persistence or pace. 20 C.F.R. § 416.926a(c)(4). To establish disability, the child must demonstrate "extreme" limitation in one area of functioning, or "marked" limitation in two areas of functioning. 20 C.F.R. § 416.926a(b)(2). The regulation defines "marked" limitation as "more than moderate" and "less than extreme," and further provides that "[m]arked limitation may arise when several activities or functions are limited or even when only one is limited as long as the degree of limitation is such as to interfere seriously with the child's functioning." 20 C.F.R. § 416.926a(c)(3)(i). "Extreme" limitation for children of Aaron's relevant age is defined as "no meaningful functioning in a given area. There may be extreme limitation when several activities or functions are limited or even when only one is limited." 20 C.F.R. § 416.926a(c)(3)(ii).

The ALJ found in favor of the plaintiff at step one and step two of the analysis. He found against the plaintiff at step three, concluding that Aaron did not show extreme limitations in any area of functioning or development, and showed marked limitation only in Aaron's social functioning. On the question of Aaron's functional limitation in the area of concentration, persistence or pace, the ALJ stated:

> The claimant's teachers' [sic] have consistently indicated that the claimant generally has a short attention span (exhibits 28 and 33). However, during the claimant's work evaluation sessions in August 1997, it was noted the claimant had a good attention span (exhibit 40, page 2). At the time of hearing the claimant was able to interrupt his mother on several occasions to correct inaccurate statements given by the mother. As such, the claimant's concentration and persistence at the time of hearing was actually good.
>
> Based on the evidence of record the undersigned finds a less than marked limitation with respect to the claimant's concentration, persistence and pace.

(Tr. at 29.)

### III.

■ The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than scintilla of evidence. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1053 (6th Cir.1983) (citations omitted). The reviewing court must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997). This Court may not base its decision on a single piece of evidence and disregard other pertinent evidence when evaluating whether substantial evidence in the record exists. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). However, where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989). The substantial evidence standard "presupposes that there is a zone of choice within which

---

1. The regulation, 20 C.F.R. 416.926a(c)(4), sets forth six areas of functioning; however one area, responsiveness to stimuli, was not age appropriate for consideration in Aaron's case.

decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc) (internal quotes and citations omitted). Thus, the Court "may not try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984).

## IV.

█ The ALJ based his decision finding no marked impairment in concentration, persistence or pace on two factors: comments contained in a report from the Arnold Center on Aaron's progress during a one-week work evaluation program, and the ALJ's own observations and interpretation of Aaron's conduct at the hearing itself. (Tr. at 29.) The defendant acknowledges that the ALJ's decision is not based on substantial evidence, as the plaintiff contends. The Magistrate Judge in this case properly reached the same conclusion. A substantiality of evidence evaluation does not permit a selective reading of the record.

> Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.

*Garner,* 745 F.2d at 388 (citations and internal quotations omitted). *See also Laskowski v. Apfel,* 100 F.Supp.2d 474, 482 (E.D.Mich.2000). Because the decision to deny benefits is not supported by substantial evidence on the whole record, as outlined below, the decision of the Commissioner cannot stand.

## V.

█ Having determined that the decision of the ALJ must be reversed, the Court must decide whether the matter should be remanded to the agency for further consideration, or a remand for an award of benefits in warranted. The parties disagree on this issue. The defendant argues that until the conclusions in the report from the Arnold Center—that Aaron was able to maintain good concentration during his work and testing activities—can be reconciled with other evidence in the record that shows plaintiff's impairment in the area of concentration, persistence, or pace, an essential fact remains unresolved. The defendant contends that the question of whether this limitation meets the definition of "marked" set forth in the regulation is a question of fact which only the Commissioner may answer, not this Court. The plaintiff contends that proof of Aaron's disability is overwhelming and that all "essential" fact issues have been resolved by the evidence in the record. In *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171 (6th Cir.1994), the Court of Appeals held:

> If a Court determines that substantial evidence does not support the Secretary's decision, the Court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.

*Id.* at 176.

In that case, an adult plaintiff had applied for Social Security disability insurance benefits on the basis of knee and wrist problems, numbness in the fingers of his right hand, high blood pressure, high cholesterol, a cancer surgery and depression. Benefits were denied on the basis of the testimony of a vocational expert who identified several thousand sedentary jobs that an individual with plaintiff's residual functional capacity could perform. The expert's opinion was based upon a hypothetical question that did not incorporate the plaintiff's obesity and emotional impairments. The district court determined that the hypothetical question was improper, and therefore the ALJ's denial of benefits was not based on substantial evidence. The district court also concluded that it

**896**

was unable to remand for taking new and additional evidence because of the limitation contained in sentence six of 42 U.S.C. § 405(g) which conditions a remand on a showing of good cause. Rather, the district court remanded for an award of benefits. On appeal, the Court of Appeals agreed that sentence six of § 405(g) requires the Secretary to establish good cause as a prerequisite to a remand. However, a post-judgment remand for further proceedings is authorized under sentence four of § 405(g). *See Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

The Court of Appeals in *Faucher* agreed that the Commissioner's decision was not supported by substantial evidence, but concluded that a remand for benefits was inappropriate in that case. The Court reasoned that the record was incomplete because the correct hypothetical question was never posed to the vocational expert. The witness was never given an opportunity to respond to a question that incorporated not only plaintiff's physical impairments but also the severity of his emotional impairments, and the record contained conflicted evidence on the severity of plaintiff's emotional impairments. The Court observed that the district court had acknowledged that "it was not known whether plaintiff might be capable of performing a significant number of jobs in the national economy that would accommodate his combined limitations." *Id.* at 176. The Court concluded, therefore, that "the case must be remanded to the ALJ for further consideration of this issue." *Id.*

In *Mowery v. Heckler,* 771 F.2d 966 (6th Cir.1985), the plaintiff sought Social Security disability insurance benefits, which were denied at the agency level, and he did not prevail in the district court. He suffered from hypertension, headaches and dizziness, and aches and pains. He was forced to stop work as a construction laborer because of pain. He had worked several years earlier as a night watchman.

His I.Q. was below-average. Psychological tests established that plaintiff was able to function only in construction and mining jobs, and an orthopedic examination showed that the plaintiff had limitation in movement which precluded that activity. The ALJ had denied benefits, concluding that plaintiff could perform light work, such as that of a night watchman, although there was evidence in the record that plaintiff had suffered a hearing loss and could only perform as a night watchman when assisted by his son and daughter. The Court of Appeals reversed the district court and remanded the case to the agency for an award of benefits. The Court held:

> The court finds it unnecessary to remand the case to the Secretary for further evaluation. In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.

*Id.* at 973.

■ In this case, the question becomes whether the record on the question of Aaron's limitation in the area of concentration, persistence *or* pace is adequate. If it is, then the Court must determine if the evidence of "marked" impairment in this area of functioning is overwhelming, or the evidence is strong and contrary evidence is lacking.

The regulation, stated in the disjunctive, defines this area of development or functioning as:

> [t]he ability or inability to attend to, and sustain concentration on, an activity or task, such as playing, reading, or practicing a sport, and the ability to perform the activity or complete the task at a reasonable pace.

20 C.F.R. § 416.926a(c)(iv).

The ALJ acknowledged that Aaron's teachers had "consistently indicated that the claimant generally has a short atten-

tion span." (Tr. at 29.) This observation, however, severely understates the evidence in the record. Since 1995, Aaron was evaluated by seventeen professionals in the areas of education, psychology and human behavior, all of whom commented on the degree of Aaron's impairment, especially during his ninth-grade year and thereafter.

For instance, beginning in January, 1995, the report of the multi-disciplinary evaluation team showed that Aaron's performance in the general education part of the school was fair to poor and he frequently received D's, while his special education performance was at a B-level. However, the report indicates that Aaron's ability to sustain attention and concentrate were weak with respect to non-verbal reasoning abilities. He did not exhibit significant deficits in math reasoning or calculation abilities but he required two to three times as long as the typical student to complete reading comprehension tests. Dr. Nixon diagnosed a major depressive disorder later that year. In November, 1995 teacher evaluations confirmed Aaron's short attention span and noted that although he had the ability to complete assignments when he is supervised and encouraged, he required constant reminders to stay on task.

An evaluation by a counselor in November, 1995 suggested that Aaron's stream of thought was slow. His global assessment functioning was 50, indicating serious symptoms.[2] In February, 1996, a caseworker reported that Aaron had difficulty concentrating and remembering.

Dr. M. Syed, a treating psychiatrist, reported in March, 1996 that Aaron was alert and pleasant, but also subdued and withdrawn, and that he had difficulty understanding things. Dr. Syed reported a GAF score of 40, indicating impairment in reality testing or communication. A special education teacher, Ronald Gorman, reported in April, 1996 that Aaron had a poor attention span and displayed bizarre behavior, required constant supervision and had difficulty doing anything on his own. He also had difficulty understanding, recording and completing assignments. In December, 1996, Dr. Mitchell Osman indicated that Aaron's thoughts were occasionally illogical and irrational and that he had poor concentration. The doctor believed that Aaron's problems appeared to be the result of a thinking disturbance.

Aaron's computer-aided design teacher, Art Halloran, reported in December, 1996 that Aaron handed in thirteen of fourteen assignments during the first six weeks of the semester, but the second six weeks he

2. As Magistrate Judge Binder observed in his Report and Recommendation, p. 14 n. 2, the Global Assessment of Functioning (GAF) scale is reflected in Axis V of a differential diagnosis. "Axis V is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact and in predicting outcome. The reporting of overall [psychological, social, and occupational] functioning of Axis V is done using the Global Assessment of Functioning (GAF) Scale." *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (*DSM IV* ), 30 (4th ed.1994). A GAF Scale of 70 to 61 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships; a scale of 51–60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with co-workers); a scale of 41–50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job); a scale of 31–40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

handed in only three of thirty-two assignments. He stayed busy during the entire class period and went through the motions but never handed anything in. Aaron's English instructor also reported that month that he had difficulty staying focused. She would have to guide him back on task. Likewise, a special education instructor reported that month that Aaron did not complete his work in class, lacked classroom organizational skills, had difficulty working independently and following directions, and appeared confused about what he should be doing in class. Another teacher reported that Aaron was frequently off-task and out of areas he was assigned.

Dr. Syed also reported in May, 1997 that Aaron was more alert and not as depressed. In August, 1997, Aaron participated in the work evaluation program at the Arnold Center. Aaron's mother states that Aaron functioned adequately in a one-on-one setting, and that the Arnold Center program was highly structured. The evaluation indicates that Aaron maintained good concentration during his work and testing activities, that he generally completed his tasks, and that although on one occasion he needed prompting to return to work he typically met the expectations of his supervisors. However, later that year back at school in October, 1997, Aaron's teacher and the school social worker reported that Aaron's attention usually wandered off during class, that he needed to be redirected, and that he could work independently but not at a consistent, adequate pace. In November, 1997, one teacher evaluated Aaron as failing to finish things he starts, lacking the ability to concentrate, appearing confused and frequently daydreaming, having difficulty following directions, and failing to carry out assigned tasks.

With the exception of the Arnold Center report and the ALJ's own observation of Aaron's conduct during the hearing, the record clearly establishes that Aaron is "more than moderate[ly] limited in his ability to attend to and sustain concentration on normal tasks, and to complete those tasks at a reasonable pace." The ALJ's observations do not necessarily contradict this conclusion in the record. More importantly, however, the ALJ's observations are not a proper basis upon which to rest a factual conclusion in this case. In assessing the credibility of a witness, personal observations are certainly important. In fact, it is one of the reasons underlying the preference for live testimony. *See* 2 *McCormick on Evidence* § 94, at 95 (4th ed.1992); *cf. Ohio v. Roberts,* 448 U.S. 56, 63–64, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). However, the ALJ's reliance on his personal observation in this case was more akin to those of a medical or psychological expert assessing symptoms of a patient or examinee, and then drawing conclusions therefrom. Traditionally, conclusions of the sort made by the ALJ with respect to Aaron's behavior require that the observer establish some expertise by skill, knowledge, education, training or experience, *cf.* Fed.R.Evid. 702, which does not appear in this record. Further, the ALJ's reliance on his personal observation in this case is analogous to the so-called "sit and squirm" test, a procedure that has been thoroughly discredited and which cannot serve as a basis for the rejection of a claimant's allegations of disability. *See King v. Heckler,* 742 F.2d 968, 975, n. 2 (6th Cir.1984) ("[W]here all the medical evidence consistently supports the applicant's complaint of severe back pain, as here, the ALJ's observation of the applicant at the hearing will not provide the underpinning for denial of Social Security benefits."). *See also Martin v. Sec'y of Health and Human Servs.,* 735 F.2d 1008, 1010 (6th Cir.1984); *Weaver v. Sec'y of Health and Human Servs.,* 722 F.2d 310, 312, (6th Cir.1983).

Nor does the report from the Arnold Center constitute substantial evidence in support of the ALJ's decision. The defendant acknowledges as much by conceding that substantial evidence in the record

does not exist to support the ALJ's decision. Further, although the Arnold Center report does comment on Aaron's ability to concentrate, it provides little guidance on persistence or pace except, perhaps, to demonstrate a limitation. For example, the report does note that Aaron could not successfully complete his driver's education program and was unable to earn a driver's license. (Tr. at 263.) The Court concludes in this case, therefore, that the record clearly establishes plaintiff's entitlement to benefits and that all the essential factual issues have been resolved because proof of disability is overwhelming. To the extent that the Arnold report can be read as contradicting a finding of marked limitation in Aaron's concentration, persistence or pace, it is overwhelmed by the substantial and compelling evidence to the contrary. To the extent that the decision of the Magistrate Judge finds otherwise, the Court declines to follow it.

## VI.

The parties have agreed that the decision of the Commissioner is not supported by substantial evidence on the whole record. Accordingly, the decision shall be reversed. Further, the Court finds that the record adequately establishes plaintiff's entitlement to benefits, proof of Aaron's disability is overwhelming, and that a remand for an award of benefits is appropriate in this case.

Accordingly, it is **ORDERED** that the defendant's Motion to Remand [dkt # 20] is **GRANTED** in part and **DENIED** in part. The plaintiff's Motion for Summary Judgment [dkt # 14] is **GRANTED**.

It is further **ORDERED** that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for an award of benefits.