**Earl DESANTIS, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**Case No. 1:13–cv–576.**

United States District Court, S.D. Ohio, Western Division.

Signed June 4, 2014.

---

702

Gayle P. Vojtush, O'Connor Acciani & Levy, Cincinnati, OH, for Plaintiff.

Deepa Rajkarne, Office of the Chief General Counsel for SSA, Chicago, IL, John J. Stark, US Attorney Office, Columbus, OH, for Defendant.

**ORDER THAT: (1) THE ALJ'S NON–DISABILITY FINDING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IS REVERSED; (2) JUDGMENT IS ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE IS CLOSED**

TIMOTHY S. BLACK, District Judge.

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge (the "ALJ") erred in finding the Plaintiff "not disabled" and therefore not entitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript at ("Tr.") (Tr. 12–25) (ALJ's decision)).

**I.**

On July 6, 2009, Plaintiff applied for DIB and SSI, alleging disability as of June 1, 2009. (Tr. 12, 174, 183). Plaintiff alleges disability due to schizoaffective disorder, depression, mood disorders, delusions, borderline intellectual functioning, hypertension, diabetes, and cerebral palsy. (Tr. 14).

The state agency denied Plaintiff's applications initially and upon reconsideration,

and Plaintiff timely requested a hearing. (Tr. 12, 72–75, 118–119). In September 2011, the ALJ held a hearing at which Plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (Tr. 12, 31–71). In March 2012, the ALJ determined that Plaintiff was not entitled to benefits. (Tr. 12–25). In June 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 76–78), and it became the Commissioner's final and appealable decision. *See* 20 C.F.R. §§ 404.955, 404.981, and 416.1481. Plaintiff now seeks judicial review pursuant to section 205(g) of the Act. 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff is 37 years old and has a high school education.[1] (Tr. 197–206). Plaintiff was honorably discharged from the military after one month for failure to adapt to military standards. (Tr. 38). He has past relevant work experience as a loader/cart returner for a home improvement store.[2] (*Id.*) Plaintiff was terminated from his last job because he was missing too many days and frequently arrived late. (Tr. 34). Plaintiff lives with his parents. (Tr. 36).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

2. The claimant has not engaged in substantial gainful activity since June 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: diabetes, cerebral palsy,[3] mood disorder, borderline intellectual functioning, bipolar disorder, vitiligo,[4] hypertension, and history of cellulitis[5] (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). However, he should never climb ladders, ropes or scaffolds. The claimant should avoid all exposure to hazards such as dangerous machinery and unprotected heights. He is limited to understanding, remembering, and carrying out sim-

1. In high school, Plaintiff had an IEP and was in special classes. Plaintiff took a few courses at Cincinnati State, where he studied building technology, but "never made it through." (Tr. 38).

2. Past relevant work experience is defined as work that the claimant has "done within the last 15 years, [that] lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 416.965(a).

3. Cerebral palsy is a general term for a group of permanent, non-progressive movement disorders that cause physical disability, mainly in the areas of body movement.

4. Vitiligo is a condition that causes depigmentation of parts of the skin.

5. Cellulitis is a bacterial infection that affects the skin. The area of infection is usually painful, and the person may have a fever and feel tired.

ple tasks and performing simple tasks. The claimant should have only occasional interaction with the general-public, and should not be subject to production rate pace work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 29, 1976 and was 32 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical–Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82–41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2009 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14–25).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations, and he was therefore not entitled to DIB or SSI. (Tr. 25).

On appeal, Plaintiff argues that: (1) the ALJ failed to properly consider the three treating physicians' opinions and give valid reasons for not giving them controlling and/or deferential weight; (2) the ALJ erred in refusing to consider new evidence from the Bureau of Vocational Rehabilitation; (3) the ALJ erred in failing to properly consider Anne Fulton's opinions; and (4) the ALJ erred in not finding that the Plaintiff met the listing of 12.04(A)(2) and/or 12.04(C3). The Court will address each issue in turn.

**II.**

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir.1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

"The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is sup-

ported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir.1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

The record reflects that:

### 1. *Medical Evidence*

Plaintiff developed cerebral palsy as a child and diabetes mellitus when he was 29 years old. (Tr. 469). Plaintiff's diabetes remains uncontrolled, and he had an inpatient stay due to diabetic ketoacidois. (Tr. 324, 507–641). In 2011, he passed out in the grocery store. (Tr. 652–657). His blood sugar numbers are erratic and uncontrolled. (Tr. 367, 378, 388, 354, 362, 396, 393, 400, 410, 423).

Plaintiff underwent an IQ test in 1989 and was assessed a full scale IQ of 74.[6] School faculty observed that Plaintiff had significant deficits in basic reading skills, mathematics comprehension, calculation, and reasoning, as well as significant deficits in fine motor skills and adaptive behavior. (Tr. 248–276). He was diagnosed with schizoaffective disorder and borderline intellectual functioning and assigned a global functioning score of 46.[7] (Tr. 823). He reported that he gets angry for no reason, and at times, he will drift off and lose concentration. (Tr. 824).

### 2. *Hearing Testimony*
#### a. **Plaintiff's Testimony**

Plaintiff testified that due to his diabetes, he has numbness and tingling in his hands and drops things due to a tingling sensation in his hands and feet. (Tr. 40, 44). He also has cerebral palsy and can only walk about a tenth of a mile before he has to stop and rest. (Tr. 46). He also has a difficult time answering questions and processing information. (Tr. 46–47). He was terminated from work as a result of too many absences—approximately four days a month. (Tr. 42). He always feels that someone is out to get him. (Tr. 47). Plaintiff talks to himself out loud daily and hears voices telling him what to do. (Tr. 47–48). He can carry on a conversation with his father for approximately five minutes. (Tr. 48). Plaintiff cannot watch a 30 minute television program and talk to his father about it, because he has concentration and focus problems. (*Id.*) He gets tingling pain in his feet when he tries to vacuum. (*Id.*)

#### b. **Father's testimony**

Plaintiff's father testified that Plaintiff's cerebral palsy affects him when he is doing

---

**6.** Records show a 1989 verbal IQ score of 77, performance IQ score of 75, and full scale IQ score of 74. Individuals with borderline intellectual functioning have below average cognitive ability (generally 70–85), but the deficit is not as severe as intellectual disability (70 or below).

**7.** The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, *e.g.,* how well or adaptively one is meeting various problems-in-living. A score of 41–50 indicates serious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job, cannot work).

any type of movement, trying to do anything or handle anything, and his hands will go numb two or three times a week and can last a half of a day. (Tr. 52). He has problems expressing himself, comes across as very slow, and when asked a question, takes a long time to answer. (Tr. 53). Plaintiff's father testified that Plaintiff has a lack of focus and cannot concentrate. For example, if the father asks Plaintiff to do something around the house, the father has to repeat himself, sometimes three, four, and five times to get Plaintiff to do something. (*Id.*) Plaintiff's attention and focus is limited to 15 or 20 minutes. (Tr. 54). Plaintiff has conversations with invisible people two to four times a day. (*Id.*) With regard to his diabetes, EMS had to be called to a Kroger's store when Plaintiff collapsed because his sugars were down to 25 or 26. (Tr. 57).

### c. ALJ Decision

In his decision, the ALJ determined that Plaintiff had the following "severe" impairments: diabetes, cerebral palsy, mood disorder, borderline intellectual functioning, bipolar disorder, vitiligo, hypertension, and

history of cellulitis. (Tr. 14). The ALJ found that Plaintiff had the residual functional capacity to perform a full range of sedentary work.[8] However he should never climb ladders, ropes or scaffolds, and should avoid all exposure to hazards such as dangerous machinery and unprotected heights. Plaintiff was limited to understanding, remembering, and carrying out simple tasks and performing simple tasks, should have only occasional interaction with the general public, and should not be subject to production rate pace work. (Tr. 17). Based on this RFC determination, there are jobs that the ALJ thought Plaintiff could perform such as assembler inspector and hand packager. (Tr. 24).

### B.

■ First, Plaintiff claims that the ALJ erred in failing to properly weigh the opinions of his treating physicians.[9]

In his decision, the ALJ relied on the state agency physicians. The most recent of such opinions were rendered in 2010 (Dr. Steven Meyer) and 2009 (Drs. Patricia

---

8. Residual functional capacity ("RFC") is an assessment of the most a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a). A claimant's RFC is used to assess whether that claimant can perform past relevant work and whether the claimant can adjust to other work. 20 C.F.R. § 404.1520(a)(4). In assessing a claimant's RFC, the ALJ must consider "all relevant evidence and findings regarding an individual's work related limitations." *Cooper v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 450, 452 (6th Cir.2007).

9. The treating physician rule requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because:

These sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claim-

ant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir.2009).

The regulations state:

Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 404.1527(d)(2)(i).

Semmelman and Nancy Schmidtgossling [10] ), more than a year prior to the hearing, and before most of the medical evidence was filed. (Tr. 649–832). Dr. Schmidtgossling is the only state agency physician who actually met and examined Plaintiff. Moreover, the RFC opinions from these doctors are inconsistent with the opinions of treating physicians Dr. Murthy, Dr. Delamerced, and Dr. Heile.

Dr. Heile saw Plaintiff *thirty-seven* times, beginning as early as September 2006. Dr. Heile diagnosed Plaintiff with bipolar/depression, cerebral palsy, and uncontroled diabetes, which causes severe fatigue and the inability to hold gainful employment. In a Residual Functional Capacity form dated January 13, 2010, Dr. Heile found that Plaintiff was markedly limited in his ability to: (1) complete a normal workday and workweek without interruptions from psychologically based symptoms; (2) perform at a consistent pace without an unreasonable number and length of rest periods; (3) maintain socially appropriate behavior; and (4) adhere to basic standards of neatness and cleanliness.[11] The ALJ discounted Dr. Heile's opinions, claiming that the limitations were outside of the doctors' specialty and inconsistent with the doctor's own statements.[12] However, the fact that Dr. Heile

made several positive findings (that Plaintiff's bipolar disorder improved after medication (Tr. 22), Plaintiff could handle management of his diabetes (Tr. 20), and that Plaintiff exhibited a normal affect in July 2011 (Doc. 22)), does not render Dr. Heile's findings "inconsistent." Dr. Heile saw Plaintiff *thirty-seven* times; the fact that he made three (rather modest) positive findings does not invalidate his limitations.

Dr. Murthy had been treating Plaintiff since May 20, 1999, and saw Plaintiff *twenty-two* times. On January 18, 2010, Dr. Murthy completed a Residual Functional Capacity form. (Tr. 503–506, 644–648, 650–651, 738–740). Dr. Murthy diagnosed Plaintiff with severe depression and schizoaffective disorder-depressed. (*Id.*) Dr. Murthy determined that Plaintiff has severe problems with social interactions, especially with the general public or coworkers/supervisors; has poor concentration, persistence, pace, patchy memory; confusion at times and poor frustration tolerance; is paranoid and withdrawn and has a very poor ability to tolerate stress. (*Id.*) Dr. Murthy found that Plaintiff was markedly limited in 16 out of 20 areas of social functioning and recommended that Plaintiff's parents handle his benefits.[13] (Tr.

10. Dr. Schmidtgoessling opined that Plaintiff would not be able to handle his own benefits, which calls into question his ability to work.

11. Even Dr. Schmidtgossling observed that Plaintiff had an unpleasant body order, wore a dirty gray polo shirt and dirty jeans, and had uneven and dirty fingernails. (Tr. 21).

12. The Regulations do not permit the ALJ to reject a treating family physician's opinion about a mental impairment on the ground that he is not a psychiatrist. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir.1996).

13. Dr. Murthy found that Plaintiff was markedly limited in his ability to: (1) remember work-like procedures and locations; (2) re-

member detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for extended periods; (5) perform activities within a schedule; (6) maintain regular attendance and be punctual within customary tolerances; (7) sustain an ordinary routine without special supervision; (8) work in coordination with or proximity to others without being distracted by them; (9) complete a normal workday and workweek without interruptions from psychologically based symptoms; (10) perform at a consistent pace without an unreasonable number and length of rest periods; (11) interact appropriately with the general public; (12) accept instructions and respond appropriately to criticism from supervisors; (13) get along

503–506). The ALJ found Dr. Murthy's opinion to be conclusory with little explanation and noted that Dr. Murthy had not treated Plaintiff for three years prior to his evaluation. However, the record contradicts these findings. Dr. Murthy's findings were based on medical records from 22 visits, including visits before (2009 and 2010) and after the RFC form was completed on January 18, 2010.

Dr. Delamerced saw Plaintiff *six* times and on August 18, 2011, opined that Plaintiff was incapable of even "low-stress" jobs and would be absent more than four days per month. (Tr. 696–701). The ALJ determined that Dr. Delamerced's opinions as to the Plaintiff's ability to perform work related activities were entitled to little weight, because specific objective findings are needed to support the level of restriction. However, Dr. Delamerced's objective findings included diabetes blood sugars ranging from 207–424, vitiligo, anxiety, hypertension, back pain, rash on legs and up to groin, right posterior leg punctuate erythematous lesions, and pain in shoulder joint region.

The doctors' longitudinal picture of Plaintiff's medical impairments simply cannot be rejected because of minor inconsistencies and allegations of insufficient objective evidence. In this case in particular, the treating physicians saw Plaintiff a significant number of times over an extended period. 20 C.F.R. § 404.1527(d)(2)(i) ("The longer a treating source has treated you and the more times you have been seen by a treating source, the more weight

we will give to the source's medical opinion.").

Accordingly, the Court finds that the ALJ erred in failing to properly weigh the opinions of Drs. Heile, Murthy, and Delamerced. Contrary to the ALJ's findings, the overwhelming evidence supports a finding of disability.

### C.

Next, Plaintiff maintains that the ALJ erred in refusing to consider new evidence from the Bureau of Vocational Rehabilitation ("BVR").

■ When a party presents new evidence on appeal, the Court can remand for further consideration where the party seeking remand shows that the new evidence is "material." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir.1992). "[R]emand to the SSA for consideration of new evidence is appropriate when there is a reasonable possibility that consideration of the offered evidence would have resulted in a different determination." *Huffer v. Heckler*, 591 F.Supp. 626 (S.D.Ohio 1984).

■ Plaintiff went to the BVR seeking help finding a job. However, the BVR determined that Plaintiff could not work full time on a sustained basis, and on February 27, 2012, the BVR closed his file. (Tr. 292–294). The ALJ issued his decision on March 2, 2012. Plaintiff argues that the BVR records are material because they address whether Plaintiff is capable of working full-time. However, decisions by other agencies are not binding upon the

with co-workers or peers without distracting them or exhibiting behavioral extremes; (14) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (15) respond appropriately to changes in the work setting; (16) be aware of hazards and take appropriate precautions; (17) travel in unfamiliar places or use public

transportation; and (18) set realistic goals or make plans independently of others. (Tr. 739–740). A couple of months later, Dr. Murthy found that Plaintiff could not function even at a marginal level, because Plaintiff had severe problems with interpersonal relationships and a very poor ability to tolerate stress. (Tr. 22).

Social Security Administration. 20 C.F.R. §§ 404.1504, 416.904. Therefore, while the BVR's determination is persuasive, Plaintiff fails to show that there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered. Therefore, a sentence six remand is not required.

### D.

■ Plaintiff maintains that the ALJ erred in failing to properly consider the opinion of Anne Fulton, Psychiatric Mental Health Nurse Practitioner.

Prior to completing a Mental Impairment Questionnaire, Anne Fulton saw Plaintiff *thirty-eight* times. (Tr. 664–670). While Ms. Fulton is not a physician or psychologist, and thus cannot be considered an "acceptable medical source," she is a treating mental health nurse practitioner who spent extensive time with the Plaintiff. SSR 06–3 provides:

> although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudication generally should explain the weight given to opinions from these "other sources" or otherwise ensure that the discussion of the evidence in the determination or decision allows Plaintiff or subsequent reviewer to follow the adjudicator's reasoning when such opinions may have an effect on the outcome of the case.

While the adjudicator cannot give "controlling weight" to non "acceptable medical sources" in disability claims, it can give

"great" weight to a non-medical source opinion, such as a Psychiatric Mental Health Nurse Practitioner. *See* SSR 06–03p ("For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.").

The ALJ considered Ms. Fulton's opinion and found that she was not a source that could be relied upon for establishing an impairment. However, it is not clear that the ALJ considered each of the relevant factors enumerated by SSR 06–3p.[14] Specifically, this Court notes that Ms. Fulton has a professional license issued by the State of Ohio and is qualified to render treatment and medical opinions. She possesses a superior longitudinal knowledge of Plaintiff's record, and her opinions are based upon multiple treatment contacts over a significant period of time. Moreover, her opinions are consistent with the other treating physicians. Accordingly, Ms. Fulton's opinion should have been given some weight.

### E.

■ Finally, Plaintiff argues that the ALJ erred in finding that he did not meet Listings 12.04(A)(2), (B), or (C)(3).

Plaintiff alleges that if the ALJ properly assessed Dr. Murthy and Ms. Fulton's opinions, he would have met or equaled the Listing for 12.04(A)(2) and (B).[15] However, the Court finds that the evidence failed to document the required persistence of a

---

**14.** These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source present relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of

expertise related to the individuals impairments; and (6) other factors that tend to support or refute the opinion. *Id.*

**15.** 12.04 Functional nonpsychotic disorders (psychophysiologic, neurotic, and personality disorders; addictive dependence on alcohol or drugs). With both A and B:

depressive syndrome characterized by at least *four* of the following: (a) anhedonia or pervasive loss of interest in almost all activities; (b) appetite disturbances with change in weight; (c) sleep disturbance; (d) psychomotor agitation or retardation; (e) decreased energy; (f) feelings of guilt or worthlessness; (g) difficulty concentrating or thinking; (h) thoughts of suicide; or (i) hallucinations, delusions, or paranoid thinking. Even when adopting the opinions of Dr. Murthy and Ms. Fulton, Plaintiff fails to evidence a Listing under 12.04(A)(2) and (B).

In the alternative, Plaintiff maintains that he meets Listing 12.04(c)(3), because for one or more years he has been unable to function outside of a highly supportive living environment.[16] While the testimony of Plaintiff's father and doctors support a finding that Plaintiff cannot function outside of a highly supportive living arrangement,[17] this Court declines to make such a finding, because the evidence supports a finding that Plaintiff cannot complete even sedentary work on a sustained basis.

## III.

When, as here, the non-disability determination is not supported by substantial

evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

■ Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir.1994); *see also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir.1990); *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 782 (6th Cir.1987).

■ The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher,* 17 F.3d at 176; *see also*

---

A. Manifested persistence of one or more of the following clinical signs:

2. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or

B. Resulting persistence or marked restriction of daily activities and construction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.

20 C.F.R. Subpart P, App. 1 Section 12.04. (1979).

**16.** To qualify for a disability under Listing 12.04(c), a claimant must provide evidence of:

[A] [m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a mini-

mal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

**17.** A highly supportive living arrangement does not require institutionalized living. 12.04(c)(3).

*Felisky,* 35 F.3d at 1041; *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir.1985). Such is the case here.

Here proof of disability *is* overwhelming and remand will serve no purpose other than delay. As fully recited here, in view of the extensive medical record evidencing disability, and the credible and controlling findings and opinions of Drs. Heile, Murthy, Delamerced, and Ms. Fulton, the ALJ failed to meet its burden of finding substantial evidence that Plaintiff is able to engage in substantial gainful activity. Instead, proof of disability is overwhelming.

### IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner, that Earl Desantis was not entitled to disability insurance benefits or supplemental security income, is hereby found to be **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, and** it is **REVERSED;** and this matter is **REMANDED** to the Commissioner for an immediate award of benefits from June 1, 2009.[18] The Clerk shall enter judgment accordingly, and this case shall be **CLOSED.**

### IT IS SO ORDERED.

---

18. Both Drs. Schmidtgossling and Murthy opined that Plaintiff could not handle his benefits. Accordingly, the Court encourages counsel to arrange for a receiver.