R. STEVEN WHALEN, UNITED STATES MAGISTRATE JUDGE
Plaintiff Jordan Kushner ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner ("Defendant") terminating his Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket # 25] be DENIED, that Plaintiff's Motion for Summary Judgment [Docket # 21] be STAYED, and that the case be REMANDED for further proceedings under the sixth sentence of 42 U.S.C. § 405(g).[1]
*800 I. PROCEDURAL AND FACTUAL BACKGROUND
This case has a tangled history. Plaintiff, born December 6, 1964, began receiving SSI in January, 1983 due to congenital brain damage causing severe intellectual deficits (Tr. 42, 171, 173, 176, 121). Plaintiff's father, Alvin Kushner was named representative payee[2] (Tr. 42, 173-174). In August, 1988, Plaintiff became eligible for Disabled Adult Child ("DAC") Retirement Survivor Disability Insurance ("RSDI") based on his father's earnings (Tr. 42, 176). In April, 1992, Plaintiff was approved to participate in SSA's program to achieve self-support ("PASS") which allowed him to work while maintaining SSI eligibility (Tr. 42, 180, 188-190). Under PASS, Plaintiff was authorized to set aside some of his monthly income while continuing to receive SSI (Tr. 52-54).
On March 14, 1994, Alvin Kushner authorized Marsha Katz ("Katz"), who worked for the Association for Community Advocacy ("ACA") to communicate with the SSA on Plaintiff's behalf (Tr. 42, 56). The authorization allowed Katz to communicate for one year or for as long as required to resolve Plaintiff's issues with SSI and/or PASS (Tr. 42). On March 15, 1994, Katz informed the SSA that Plaintiff was currently not employed and requested that Plaintiff's participation in PASS be terminated (Tr. 42, 57). Katz stated that she expected that Plaintiff would receive "a revised/amended PASS plan" (Tr. 57).
In March, 1995, Alvin Kushner was removed as representative payee after declaring bankruptcy (Tr. 42, 204). The following month, Katz submitted a new PASS proposal (Tr. 42). In response, the SSA informed Katz that an additional meeting was required concerning the PASS application and that Plaintiff would be receiving SSI benefits directly since the father was no longer the representative payee (Tr. 42, 61).
Plaintiff's participation in PASS continued, but in February, 1996, a total of approximately $ 7,000 was discovered in three of his bank accounts (Tr. 42, 172). Although correspondence from the SSA during that time was sent to Katz on behalf of Plaintiff, Katz did not respond to a May 24, 1996 request for an accounting of expenditures and warning that the failure to provide PASS expenditures and income could result in the cessation of SSI benefits[3] (Tr. 68-69). Plaintiff was ultimately deemed ineligible for SSI benefits as of February, 1996 due to "excess resources"
*801 of approximately $ 7,000 in various bank accounts (Tr. 42, 68-71). The overpayment of past benefits was calculated at $ 9,796.30 (Tr. 42). SSA began withholding portions of Plaintiff's benefits received under RSDI to recover the amount (Tr. 75).
Following a July 20, 2007 request, Plaintiff's sister, Stephanie Kushner, was appointed as Plaintiff's representative payee (Tr. 43, 89). On May 20, 2008, social worker Ann Carrelas requested a hearing on Plaintiff's behalf, disputing whether the 1996 cessation of benefits was proper[4] (Tr. 43, 96-98, 100). On June 4, 2008, Administrative Law Judge ("ALJ") Bennett S. Engelman found that the issue of whether the termination of SSI was proper required further development (Tr. 43, 104-105). The reconsideration was never processed (Tr. 112).
On June 19, 2013, Plaintiff, through attorney Sarah Beach Sobczak ("Sobezak"), made a second request for a decision (Tr. 43). On July 6, 2013, the cessation of SSI was affirmed (Tr. 43, 106). On August 13, 2013, Sobczak requested a hearing before an ALJ (Tr. 43, 109, 115). In pre-hearing submissions, Sobczak argued that Plaintiff's SSI ought not to have been terminated, contending that the money found in Plaintiff's bank accounts in 1996 were not "excess resources" but instead were either exempt PASS or RSDI/SSI funds, or attributable to the prior mismanagement of Plaintiff's finances by his father (Tr. 114, 116, 156-161). She argued that Plaintiff was entitled to restoration of his Medicaid coverage and to challenge the overpayment of benefits (Tr. 155). She noted that the 1996 cessation of SSI prevented Plaintiff from receiving continued Medicaid coverage as of his father's April 4, 2006 death (Tr. 155, 298, 309). She noted that had Plaintiff receiving SSI as of his father's death, he would be eligible to continued Medicaid despite an increase in RSDI benefits triggered by his father's death (Tr. 156). She noted that even prior to the January, 1995 bankruptcy filing by Plaintiff's father, the father "was not able to manage [Plaintiff's] funds" due to the father's "mental health disability" (Tr. 158).
Plaintiff appeared at an administrative hearing on March 24, 2014 (Tr. 43, 285). ALJ Dennis M. Matulewicz presided (Tr. 43, 51). Stephanie Kushner testified that Plaintiff had been living with her since 2004 when he was diagnosed with cancer (Tr. 291). She testified that she knew "nothing" of Plaintiff's former participation in the PASS program (Tr. 291).
In a partially favorable decision on April 29, 2014, ALJ Matulewicz found that (1) the determination that Plaintiff had excess resources justifying the cession of benefits was correct and that (2) Plaintiff received "proper notice" and "due process" pertaining to the cessation of benefits (Tr. 43, 50). However, ALJ Matulewicz found that recovery of overpayment to that date was not waived but the balance remaining on the overpayment was waived because Plaintiff was "without fault" in the improper receipt of benefits (Tr. 43, 50). On November 8, 2016, the Appeals Council overruled ALJ Matulewicz's finding that Plaintiff was ineligible for SSI due to overpayment as of February, 1996, finding instead that he became ineligible in October, 1997 (Tr. 28-29). The Appeals Council upheld ALJ Matulewicz's finding that Plaintiff received due process and *802 was adequately represented during the cessation proceedings (Tr. 25-29).
Plaintiff filed suit in this Court on January 10, 2017. The case was remanded for recovery of a missing document on June 19, 2017. The case was reopened on December 6, 2017. Docket # 17 .
II. STANDARD OF REVIEW
The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g) ; Sherrill v. Secretary of Health and Human Services, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) ). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." Wages v. Secretary of Health & Human Services , 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. Walker v. Secretary of Health and Human Services , 884 F.2d 241, 245 (6th Cir. 1989).
III. ANALYSIS
Both parties agree that Plaintiff's various mental and physical conditions precluded Substantial Gainful Employment for the entire period in question. At issue is whether SSI was properly terminated for "overpayment." As discussed above, although Plaintiff currently experiences multiple physical and mental conditions, the fact that he was not receiving SSI benefits at the time of his father's 2006 death precludes Medicaid coverage. See fn 2, supra ; Defendant's Brief, 7, Docket # 25, Pg ID 431; (Tr. 156).
Plaintiff, through counsel, argues first that the Appeals Council finding that he had adequate notice of pending cessation of SSI and that due process was not violated in the cessation proceedings amounts to a misapplication of the applicable Social Security regulations. Plaintiff's Brief, 9-10, Docket # 21, Pg ID 396. On a related note, he contends second that the Appeals Council determination that he was not eligible for SSI for the relevant period is not supported by substantial evidence. Id. at 10-12. In particular, he disputes the Appeal Council's finding that Stephanie Kushner " 'declined to file an application' " in 2004 for SSI benefits on his behalf " 'presumably because he was not eligible.' " Id. at 12 (citing Tr. 29). He argues that his sister's failure to complete an application in 2004, by itself, does not provide a reasonable basis for concluding that he was not eligible. Id. at 12. Last, Plaintiff contends that an October 26, 2016 letter by Marsha Katz ("Katz") which was not reviewed by the Appeals Council warrants a remand for further review at the administrative level. Id. at 13-15 (citing Docket # 21-1 ).
In response, Defendant contends that the SSA did not err by paying Plaintiff directly after his father was terminated as a representative payee. Defendant's Brief, 12, Docket # 25, Pg. ID 436. Defendant argues that under the applicable regulation, the SSA was not required to appoint a new payee and that Plaintiff's contention that the appointment of a new payee during the relevant period would have prevented the cessation of SSI is "speculative."
*803 Id. at 12-13. Defendant argues further that Plaintiff received adequate notice that the SSI was in jeopardy, noting that the SSA did not err in directing its correspondence to either Katz or Plaintiff directly. Id. at 16-17. Defendant points out that Plaintiff showed up for a May, 1996 meeting at an SSA office accompanied by an individual who worked in his apartment complex, which shows that he was able to respond to "notice" by the SSA. Id. at 17-18. Defendant notes that while significant portions of the file are missing, the SSA made adjustments for income exclusions in April, 1997 which indicates that someone was able to pass on information to the SSA on Plaintiff's behalf. Id. at 18 (citing Tr. 29).
Defendant notes that because Plaintiff was not receiving SSI at the time of his father's death, he is precluded from currently receiving Medicaid as a Retirement Survivor's Disability Insurance ("RSDI") recipient. Id. at 19-20; see also fn 2, pg. 4 above . Defendant argues, in effect, that Stephanie Kushner's failure to reapply for SSI on her brother's behalf in 2004 or anytime before the father's 2006 death (rather than the 1997 cessation of SSI) is responsible for Plaintiff's current inability to procure Medicaid benefits. Id. at 19. Finally, Defendant argues that Katz's October, 2016 letter stating that she did not have the authority to act as Plaintiff's payee during the relevant period does not constitute grounds for remand, arguing that Katz's status was irrelevant to the Appeals Council determination that in 1997, someone or some entity was able to represent Plaintiff's interests to the extent that pertinent records were submitted for review by the SSA. Id. at 20-21.
A. Applicable Law
To be eligible for SSI under Title XVI of the Social Security Act, a claimant must not only establish that he or she is disabled, but also show income and resource limits as set forth in 42 U.S.C. §§ 1382(a)(3) ; 20 C.F.R. § 416.1205(c).[5] "In order to be eligible for SSI an individual must be aged, blind or disabled and have income and 'countable resources' below specified statutory amounts." Singer v. Secretary of Health and Human Services , 566 F.Supp. 204, 206 (S.D.N.Y.1983) (citing 42 U.S.C. 1382(a) ). "The Commissioner bears the burden of proving the fact of overpayment by substantial evidence." Conley v. Berryhill , 2017 WL 3335752, at *5 (N.D.Cal. August 4, 2017) (citing McCarthy v. Apfel , 221 F.3d 1119, 1124-25 (9th Cir. 2000) ). "To recover overpayments, the Commissioner must show that the claimant actually received benefits beyond the period of disability or in excess of the correct amount." Id. (punctuation altered).
Plan to Achieve Self-Support ("PASS") was designed to help disabled persons receiving SSI become self sufficient and ultimately, not required to collect SSA disability income:
If you are blind or disabled, we will pay you SSI benefits and will not count the part of your income (for example, your or a family member's wages, title II benefits, or pension income) that you use or set aside to use for expenses that we determine to be reasonable and necessary to fulfill an approved plan to achieve self-support. (See §§ 416.1112(c)(9) and 1124(c)(13).) You may develop a plan to achieve self-support on your own or with our help. 20 C.F.R. § 416.1180
*804 "A person may develop his or her own PASS, and the SSA will, when appropriate, refer that person to a State rehabilitation agency for additional assistance in developing the plan." Bradley v. Barnhart , 2002 WL 523584, at *3 (N.D.Cal., 2002) (citing 20 C.F.R. § 416.1180 ). "Once a PASS is developed, it must be approved by the SSA." Id. (citing § 416.1226). PASS ends where a claimant fails to follow the conditions or abandons the plane; completes the time schedule set forth in the plan; or reaches the goal of self sufficiency as outlined in the plan. § 416.1182. Once PASS ends, the claimant is subject to the income limitations for SSI. Id.
B. Plaintiff's Interests Were Compromised by the Absence of a Payee
As discussed above, in March, 1995, Plaintiff's father was removed as a representative payee after having served in that capacity since 1983 (Tr. 42, 204). Plaintiff, who was found to be disabled in 1983 due to mental retardation, autism, and a seizure disorder, did not have a representative payee between March, 1995 and the November, 1997 SSA determination that he was ineligible for SSI beginning in February, 1996 (Tr. 26, 232).
In regard to the need for a representative payee, the applicable SSI regulation states that paying benefits to a representative payee on behalf of an adult claimant is appropriate "when it appears to us that this method of payment will be in the interest of the beneficiary" due to legal incompetence or because the claimant is "mentally incapable of managing benefit payments." 20 C.F.R. § 416.610. Assuming that a representative is not immediately available, the SSA pays current monthly benefits directly to the claimant "while finding a suitable representative payee unless" paying the claimant directly would cause "substantial harm." § 416.611. "[F]indings of substantial harm" are made "on a case-by-case basis" including "all matters that may affect [the claimant's] ability to manage [ ] benefits in [her/his] own best interest." Id. A finding of substantial harm is made if directly receiving benefits would cause "serious physical or mental harm" and, "[t]he possible effect of the injury would outweigh the effect of having no income to meet your basic needs." Id. A presumption of substantial harm exists if the beneficiary is legally incompetent. Id.
It is undisputed that Plaintiff was incapable of handling his benefit funds or explaining the possible reason for excess resources in his bank accounts at the time SSI was terminated. It is also undisputed that his father, having been appointed payee in 1983 was removed as representative payee in March, 1995 due to his own financial problems. No one suggests that at any time Plaintiff was able to handle his benefit funds.
Defendant's argument that it did not err by failing to appoint a new representative payee (following the termination of Plaintiff's father) and sending benefits to Plaintiff directly is not well taken. Defendant's Brief at 13. Defendant notes that although a presumption exists that paying a legally incompetent beneficiary directly will cause "substantial harm," under the SSA operational guide, determination by a court is required for a finding of "legal incompetence." Id. at 14 (citing Programs Operations Manual System ("POMS") GN 00502.023(A)(1) ). Defendant points out that it is permitted to pay a beneficiary directly absent a finding beneficiary was legally incompetent or that the direct payments would cause substantial harm. Id. (citing § 416.611). Defendant notes that Plaintiff has not been found incompetent in a court of law and that "[t]here is no requirement" under POMS or the Social *805 Security regulations to appoint a payee "within any particular period of time."Id.
However, the fact that Plaintiff has not been declared legally incompetent by a court did not obviate the clear need for a representative payee. Section 416.610, entitled "When Payment Will be Made to a Representative Payee," states the a payee is appointed in the instance of either legal incompetence or because the claimant is "mentally incapable of managing benefit payments ." § 416.610. (Emphasis added). While there is no showing that Plaintiff was ever declared legally incompetent, no one disputes that he was incapable of managing his own benefits. Likewise, while Defendant argues that the SSA is not required to appoint a payee "within any particular period of time," the failure to appoint a new payee at any point between March, 1995 and November, 1997 represents a gross failure to comply with the requirements of the regulation.
Defendant's related argument that Plaintiff was adequately represented by Katz or others for the purposes of due process is undermined by a reading of the transcript as a whole. Defendant cites ALJ Matulewicz's observation that on March 14, 1994, Plaintiff's father (then representative payee) authorized Katz to exchange information with the SSA, stating that the authorization would " 'remain in effect for as long as it takes' " for determination of Plaintiff's pass eligibility. Defendant's Brief at 17 (citing Tr. 49, 57). ALJ Matulewicz interpreted the father's authorization to communicate on behalf of Plaintiff to last indefinitely, finding that "there is little to suggest SSA should have been communicating with anyone other than Martha (sic) Katz" until July 20, 2007 when Plaintiff's sister applied to become the representative payee (Tr. 49).
As an initial matter, the "authorization" to communicate given by Plaintiff's father in his capacity as representative payee would have expired at the time the father was terminated as payee in March, 1995. As of that time, the father lacked the authority to permit anyone to communicate on Plaintiff's behalf. Second, while ALJ Matulewicz noted that Katz sent out an April 7, 1995 communication on Plaintiff's behalf, Katz failed to respond to May and June, 1996 warnings that the failure to show PASS expenditures could result in the cessation of SSI (Tr. 42, 61). While the ALJ places great import on the fact that the May and June, 1996 correspondence was addressed to Katz, the record does not include any indication that Katz communicated with the SSA after April.
Third, while both ALJ Matulewicz and the Appeals Council found that Plaintiff received proper notice because he "responded" to a notice (now missing) by showing up for a May 23, 1996 meeting at an SSA office, a letter drafted by SSA staff the following day notes that Plaintiff was accompanied by a staff member of his apartment complex, but failed to bring any documents related to his participation in PASS or information related to the investigation of whether he had excess resources (Tr. 25, 68-69). The fact that a staff member may have intercepted Plaintiff's incoming SSA mail and accompanied him to the scheduled appointment, by itself, does not establish that Plaintiff's interests were adequately represented.[6] SSA correspondence from the following day notes that the documents brought to the appointment did not include documentation related to the PASS inquiry. Further, because neither the staff member nor Katz was ever authorized as the representative payee, it is uncertain how either individual (or anyone *806 else) would have access to Plaintiff's bank records, income statements, or any information as to how the SSI beneficiary funds were being used. Fourth, while the Appeals Council noted that some individual or entity was able to supply the SSA with financial documents in the first nine months of 1997 (Tr. 28), the actual record does not show the source of the financial information or answer the question of how or when the "excess resources" came to be in Plaintiff's account. Defendant's Brief at 18 (citing Tr. 251-255, 281).
Defendant also argues that Plaintiff's inability to receive Medicaid is attributable to his sister's failure to reapply for SSI on his behalf at any time after the cessation of benefits but before the death of the father. Defendant's Brief at 19. However, even assuming that Plaintiff's sister erred by failing to later make a new application for benefits, her alleged failure does not remedy the fact that Plaintiff was without a representative payee for the 30-plus months between the discovery of "excess resources" and the November, 1997 finding that he was not entitled to SSI. Defendant's claim that the cessation of benefits was of no import because his sister was free to apply on his behalf at a later date unfairly shifts the burden to Plaintiff to reestablish his entitlement to SSI after his benefits were terminated through no fault of his own. The SSA bore the burden of showing that Plaintiff was no longer entitled to SSI in the cessation proceedings.
C. New Evidence
Plaintiff requests a remand for administrative consideration of a October 26, 2016 letter by Katz, which summarizes her interaction with Plaintiff and Plaintiff's father during the time she was asked to communicate with the SSA on Plaintiff's behalf. Docket # 21-1 ("Letter ").
The sixth sentence of 42 U.S.C. § 405(g), pertaining to evidence submitted after the administrative decision, states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." To satisfy the materiality requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" Sizemore v. Secretary of Health & Human Services , 865 F.2d 709, 711 (6th Cir. 1988).
Katz's letter satisfies the materiality prong for a Sentence Six remand. First, Katz noted that in her interaction with Plaintiff's father, she came to believe that the father "likely had a mental health or similar disability, or perhaps he himself was also autistic ..." Letter . Katz noted that Plaintiff's father "did not typically present as 'very together' " and "was confused a lot" about the "rules and policies of SSA." Id. Katz notes further that her recollection was that the father was terminated as payee in March, 1995 because he had " 'messed things up' and was not performing his payee duties according to [SSA] rules and expectations." Id. She noted that the father "frequently did not take ... advice" regarding his duties as payee.
Katz's observations are consistent with the February, 2014 sworn statement by Plaintiff's sister that her "father's mismanagement of money due to mental illness made him a very poor choice" to be a payee (Tr. 217). ALJ Matulewicz rejected the sister's statement because "proof was lacking" that Plaintiff's father mismanaged Plaintiff's funds while acting as representative payee in a manner that would falsely create an impression of excess resources *807 such as commingling his own funds with Plaintiff's to avoid bankruptcy forfeiture (Tr. 48). However, Katz's observation that the father mismanaged funds due to mental illness and that Plaintiff's financial affairs were poorly managed prior to March, 2015 when the father was terminated as payee gives credence to the sister's statement. At a minimum, it is uncertain that the ALJ would again find that "proof was lacking" given that two individuals interacting with the father observed that he was not capable of managing Plaintiff's funds.
Katz also noted that while her organization "assisted as we could," in helping Plaintiff, she stressed that she had "no legal standing, no formal role bestowed by [the] SSA, and no access to bank account or other private information." Letter . Katz's statement undermines a number of the administrative findings. First, while the ALJ found that the SSA reasonably believed that Katz had been authorized to "communicate" with the SSA on Plaintiff's behalf from March, 2014 through July, 2007 (Tr. 49), it is uncertain how Katz would have been able to provide documentation related to the excess resources investigation given that she lacked standing to access Plaintiff's bank accounts or other pertinent information. Second, while the ALJ noted that Plaintiff "had several opportunities to provide proper accounting," it uncertain how Plaintiff, mentally disabled, could have provided a "proper accounting" to the SSA when his erszatz "representative" did not have access to his bank account or other financial records (Tr. 48). Likewise, while the Appeals Council noted that some entity or individual acting on Plaintiff's behalf supplied the SSA with "information/evidence" as late as 1997 (Tr. 29), it is doubtful that the source could have bank statements or a history of deposits and withdrawals.[7] Because Katz's letter casts significant doubt on the finding that Plaintiff had "proper representation" during the relevant period, it satisfies the materiality prong for a Sentence Six remand.
Plaintiff has also shown good cause for the "late" submission. The Appeals Council's November 8, 2016 determination erroneously states that while Plaintiff was given 30 days from September 28, 2016 to submit "new and material" evidence, no additional evidence had been received[8] (Tr. 24). However, on October 31, 2016, Plaintiff's counsel faxed Katz's letter to the Appeal Council for immediate review.[9] Docket # 21-2 at 9-10. On November 16, 2016, Plaintiff's counsel again faxed the Appeals Council, noting that while she submitted Katz's letter over a week before the Council's issued its decision, the decision made no reference to the new material, stating explicitly that it had not received any new material. Id. at 7; (Tr. 24). On December 14, 2016, Plaintiff's counsel again wrote to the Appeals Council, noting that despite two followup letters and three phone calls since faxing the letter on October 31, the Appeals Council staff had not acknowledged receipt. Counsel's contention that the letter was ignored or misplaced by the Appeals Council is amply supported by the Council's November 8, 2016 statement that no additional evidence had been received since September 28, 2016 and counsel's followup communications *808 (Tr. 24). Because Plaintiff's counsel was diligent in attempting to provide Katz's letter in a timely fashion for Appeals Council review, she has met the good cause prong for a Sentence Six remand.
In closing, I note that the record evidence, discussed above, contains support for the conclusion that the cessation determination was compromised by Plaintiff's lack of a representative payee. However, it is not the Court's "task ... to reweigh the evidence" which "is solely the province of the [Commissioner]." Mullins v. Secretary of Health and Human Services , 680 F.2d 472, 472 (6th Cir. 1982). Further, given that new and material evidence warrants a remand under the sixth sentence of § 405(g) for consideration of the newer evidence, determination of whether Plaintiff actually received due process in the cessation hearing is premature.
VI. CONCLUSION
For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket # 25] be DENIED, that Plaintiff's Motion for Summary Judgment [Docket # 21] be STAYED, and that the case be REMANDED under the sixth sentence of 42 U.S.C. § 405(g).
Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991) ; United States v. Walters, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991) ; Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).
Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Under 42 U.S.C. § 405(g), a "Sentence Six" remand (in which the district court retains jurisdiction) "does not attach to any substantive ruling but merely remands the matter for further review in light of newly discovered evidence which is to be considered by the administrative law judge and therefore does not constitute a 'judgment' from which appeal can be taken." Melkonyan v. Sullivan , 501 U.S. 89, 97-99, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). The reviewing court does not grant summary judgment, but merely remands for further review. Id. The court "may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. § 405(g)." Cotton v. Sullivan , 2 F.3d 692, 696 (6th Cir.1993). However, the court retains jurisdiction in a Sentence Six remand, and enters final judgment only "after post-remand agency proceedings have been completed and their results filed with the court." Shalala v. Schaefer , 509 U.S. 292, 297, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) ; see also Melkonyan , 501 U.S. at 98, 111 S.Ct. 2157.

The SSA will pay benefits to a representative payee on behalf of an adult claimant "when it appears to us that this method of payment will be in the interest of the beneficiary" due to legal incompetence or because the claimant is "mentally incapable of managing benefit payments." 20 C.F.R. § 416.610.

The May 24, 1996 letter notes that one day earlier, Plaintiff, "accompanied by a staff member of the CRC Apartment Program," brought a grocery receipt and a CRC budget sheet, but did not bring documents related to Plaintiff's participation in PASS or eligibility for SSI (Tr. 68-69).

According to Defendant, the request was precipitated by Plaintiff's his father death at which time the RSID payments were increased. Defendant's Brief, 7, Docket # 25, Pg ID 431. The increase rendered him ineligible for Medicaid. Id. However, if he had been receiving SSI at the time of his father's 2006 death, his entitlement to Medicaid would have continued. Id. ; (Tr. 155-156).

The approximately $ 7,000 discovered in Plaintiff's various bank accounts in 1996 well exceed the statutory limits for the period in question (Tr. 28).

While Plaintiff appeared for an appointment on May 23, 1996 it is unknown whether the appointment notice was addressed to him or to Katz.

Plaintiff's sister testified that as of 2014, the bank records for the relevant period had been destroyed (Tr. 305-306).

Under the applicable regulation, "[d]ate you receive notice means 5 days after the date on the notice ...." § 416.1401. Thus, Plaintiff had until November 2, 2016 to file additional material for review.

Katz's letter suggests that Plaintiff's counsel spent considerable effort "tracking ... down" Katz before discovering that she currently lived in Montana. Letter .